United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 02-30937
_____

DAVID GRILLETTE,

Petitioner-Appellant,

versus

WARDEN, WINN CORRECTIONAL CENTER,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before GARWOOD, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

David Grillette, a Louisiana state prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition as time-barred. Grillette was granted a Certificate of Appealability ("COA") as to whether he is entitled to statutory tolling of the limitations period pursuant to 28 U.S.C. § 2244(d)(2) during the interval between the trial court's April 19, 1999, denial of his state habeas application and the filing of his supervisory writ application to the state appellate court on June 8, 2000. For the following reasons, we hold that, under the circumstances presented, Grillette's state

post-conviction relief proceedings remained "pending" and thereby tolled the limitations period throughout this interval, rendering his § 2254 application timely. Accordingly, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Grillette was convicted by a jury in Louisiana's Eleventh Judicial District Court, DeSoto Parish, of attempted second degree murder, aggravated burglary, and armed robbery, for which he was sentenced to concurrent terms of 50, 30, and 99 years' imprisonment. Grillette's convictions and sentences became final on October 31, 1991, when they were affirmed on direct appeal by the Louisiana Second Circuit Court of Appeal. Grillette did not seek direct review in the Louisiana Supreme Court. On July 12, 1993, Grillette filed an application for state habeas relief, asserting that he was denied his Sixth Amendment right to the effective assistance of counsel. Specifically, Grillette argued that his trial counsel had rendered ineffective assistance by engaging in the use and manufacture of methamphetamine during the time of Grillette's trial and by failing to object to allegedly improper and unconstitutional jury instructions.[1] On April 19, 1999, after conducting an evidentiary hearing, the trial court vacated Grillette's attempted second degree murder conviction, but denied his habeas application as to his remaining convictions. On June 8, 2000, Grillette filed an application for a supervisory writ with the Louisiana Second Circuit Court of Appeal. The Louisiana Court of Appeal reached the merits of the case, but denied relief on June 23, 2000.[2] Grillette then

---

[1] Shortly after Grillette's trial, his trial counsel was convicted and sentenced to prison on drug charges relating to his use and manufacture of methamphetamine.

[2] The Court of Appeal succinctly explained in a one-sentence opinion the basis for its denial of Grillette's writ: "**Writ Denied**. On the showing made, the exercise of supervisory jurisdiction is not warranted. See *State v. Penns*, 99-2916 (La. 12/20/99), 1999 WL 1297473." State v. Grillette, No. 34173-KW (La. Ct. App. 2d Cir. 6/23/00) (unpublished).

2

timely filed an application for supervisory writs with the Louisiana Supreme Court on June 24, 2000. On May 11, 2001, the Louisiana Supreme Court denied the writs without assigning reasons.

On April 11, 2002, Grillette filed a § 2254 petition for habeas corpus relief in federal district court, challenging his remaining state court convictions. The magistrate judge sua sponte recommended that Grillette's § 2254 petition be dismissed with prejudice as time-barred by the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Because Grillette's conviction became final prior to the AEDPA's April, 24, 1996, effective date, he was entitled to a one-year grace period from that date (in the absence of statutory or equitable tolling) to file a federal habeas petition. Egerton v. Cockrell, 334 F.3d 433, 435 (5th Cir. 2003) (citing Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998)). The magistrate judge determined that Grillette's state application tolled the limitations period under § 2244 (d) (2) until April 19, 1999, while it was pending in the trial court. From that point, Grillette had 30 days within which to timely file a supervisory writ application to the Louisiana Court of Appeal. See Louisiana Courts of Appeal Uniform Rule 4-3 (1999). The magistrate judge found, however, that Grillette had neither filed a writ application to the appellate court within that 30-day period nor obtained an extension of the return date. Citing Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001), the magistrate judge determined that tolling of the one-year limitations period therefore ceased on May 19, 1999, when the 30 days allotted by Rule 4-3 had passed. The magistrate judge further concluded that Grillette was not entitled to any further tolling under § 2244 (d) (2). The magistrate judge reasoned that by the time Grillette filed his supervisory writ application with the Louisiana Court of Appeal on June 8, 2000, more than one year had elapsed since this application was rendered untimely under Rule 4-3; therefore, the AEDPA's one-year limitations period had already expired.

3

Grillette filed objections to the magistrate judge's recommendation of dismissal, contending that he was entitled to equitable tolling because his case presented rare and extraordinary circumstances and because he had diligently pursued post-conviction relief. Grillette also argued that he was entitled to further statutory tolling. Contrary to the magistrate judge's conclusion, Grillette averred, his writ application to the Louisiana Court of Appeal was filed timely because he "gave notice of his intent to take a [w]rit on the issues related to the two convictions left standing" and the court had granted him an extension on the return date, "set[ting it] for June 8, 2000." In support of his contentions, Grillette presented a letter dated July 11, 2002, from the trial judge, Judge Beasley, verifying that following his April 1999 written judgment, he "was aware that [Grillette, through counsel,] intended to file a Writ of Supervisory Review" to the Louisiana Second Circuit Court of Appeal. Judge Beasley further wrote that "[b]ecause he was aware" that Grillette's new defense counsel had been "diligently" trying to locate and gather the documentation necessary for a writ application, "[he] believed it appropriate to extend the return date until June 8, 2000."[3] Nonetheless,

_____

[3]The state trial judge stated in his letter to defense counsel:

> . . . In my written opinion of April 28, 1999, on Mr. Grillette's original petition for post conviction relief, I found that Mr. Grillette had not received a fair trial and that he had been erroneously convicted of the offense of Attempted Second Degree Murder, one of three convictions resulting from his trial. I was aware that you intended to file a Writ of Supervisory Review to the Louisiana State Second Circuit Court of Appeal on the two convictions I upheld.
>
> I am aware of the difficulty that you were having with regard to acquiring necessary attachments for the writ to the Second Circuit . . . due to an inability to locate documents from the DeSoto Parish Clerk of Court because of the continuing courthouse renovations. Additionally, I am aware that you were communicating with the United States Department of Justice . . . pursuant to the Freedom of Information Act for the purposes of locating the original trial counsel and Mr. Grillette's records of the trial.
>
> Because I was aware that you were diligently attempting to locate necessary attachments for their [sic] writ, I believed it appropriate to extend the return date until June 8, 2000 . . . .

on August 9, 2002, the district court denied Grillette's objections, adopted the reasons stated in the magistrate judge's recommendation, and entered a judgment dismissing Grillette's § 2254 petition. Grillette then timely filed Notice of Appeal and sought a COA from the district court, which the district court denied on September 16, 2002.

This Court granted a COA "as to whether Grillette is entitled to tolling of the limitations period pursuant to 28 U.S.C. § 2244 (d) (2) during the interval between the trial court's denial of his application and the filing of his writ application to the appellate court," but denied COA on the issue whether the defendant was entitled to equitable tolling. For the following reasons, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

## DISCUSSION

In a federal habeas corpus case, we review <u>de novo</u> the district court's denial of a § 2254 application on procedural grounds. <u>Melancon v. Kaylo</u>, 259 F.3d 401, 404 (5th Cir. 2001) (citing <u>Emerson v. Johnson</u>, 243 F.3d 931, 932 (5th Cir. 2001)). The AEDPA established a one-year statute of limitations on the filing of federal habeas applications. 28 U.S.C. § 2244 (d) (1). Federal habeas applicants, such as Grillette, whose convictions became final prior to the AEDPA's April 24, 1996, enactment, had a one-year grace period until April 24, 1997, to file a federal habeas application. <u>Melancon</u>, 259 F.3d at 404 (citing <u>Hall v. Cain</u>, 216 F.3d 518, 520 (5th Cir.2000)). However, pursuant to § 2244 (d) (2), a "properly filed" state post-conviction application tolls "any [AEDPA] limitations period," including the one-year grace period, throughout the entire time during which the application is "pending." <u>Smith v. Ward</u>, 209 F.3d 383, 384 (5th Cir. 2000) (citing <u>Fields v. Johnson</u>, 159 F.3d 914, 916 (5th Cir.1998) (stating that "the § 2244(d)(2) tolling provision is applicable to this one-year [grace] period for filing following AEDPA's effective date")).

5

The Supreme Court clarified in Carey v. Saffold, 536 U.S. 214 (2002), that a state habeas "application is pending," in the context of §2244 (d) (2), "as long as the ordinary state collateral review process is 'in continuance,'" or, in other words, "until the application has achieved final resolution through the State's post-conviction procedures." Saffold, 536 U.S. at 219-20. Thus, a petitioner is entitled to, and indeed often must invoke, "one full round" of collateral review in state court before seeking federal habeas relief. Id. at 222. While that full round of state habeas proceedings is properly in progress, AEDPA's one-year period of limitations is tolled. Id. The Supreme Court emphasized that such a construction of AEDPA and its limitations period protects "the principles of 'comity, finality, and federalism,' by promoting 'the exhaustion of state remedies while respecting the interest in the finality of state court judgments.'" Id. (quoting Duncan v. Walker, 533 U.S. 167, 178 (2001)).

It is undisputed that Grillette's state post-conviction application, filed July 12, 1993, was "pending" with the trial court for almost six years, until April 19, 1999, when the trial court granted in part and denied in part the application. Accordingly, his state application clearly tolled the federal one-year limitations period, which began on April 25, 1996 (the day after the AEDPA became effective), until April 19, 1999. A state habeas application remains "pending," and thus continues to toll AEDPA's limitations period, during the interval between a state trial court's disposition of the habeas application and the applicant's "timely filing of a notice of appeal (or petition for review) in the next court." Saffold, 536 U.S. at 219-20. Grillette's application therefore remained "pending" until at least May 19, 1999, when, in the absence of an extension, the 30-day deadline under Louisiana Courts of Appeal Uniform Rule 4-3 for filing a writ application to the Louisiana Second Circuit would have expired. See Saffold, 536 U.S. at 219-20; accord, Melancon, 259 F.3d at 406

6

(holding "that § 2244 (d) (2) tolls the entire period allotted for timely state appellate review"). The version of Rule 4-3 in effect at the time of the trial court's denial of Grillette's habeas petition and the filing of his writ application provided that a trial court "shall fix a reasonable time . . . not to exceed thirty days" from the date of the trial court's adverse ruling, during which period the applicant must apply to the appellate court.[4] Grillette, however, did not file his supervisory writ application until June 8, 2000, by which time nearly thirteen months had elapsed after the trial court's denial of post-conviction relief. Though Grillette's subsequent properly filed writ application ordinarily would entitle him to further statutory tolling from the time of the proper filing, the magistrate judge concluded that no additional tolling under § 2244 (d) (2) was available to Grillette in this case because his June 8, 2000, writ application was filed more than 365 days after the federal limitations period began to run.

The primary question for our consideration on appeal, therefore, becomes whether the period starting May 19, 1999, when the ordinary 30-day window for filing a supervisory writ closed, until

---

[4]Former Rule 4-3 provided:

> When an application for writs is sought to review the actions of a trial court, the trial court shall fix a reasonable time within which the application shall be filed in the appellate court, not to exceed thirty days from the date of the ruling at issue. Upon proper showing, the trial court or the appellate court may extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return period. An application not filed in the appellate court within that time so fixed or extended shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault. The application for writs shall contain documentation of the return date and any extensions thereof; any application which does not contain this documentation may not be considered by the appellate court.

Louisiana Courts of Appeal Uniform Rule 4-3 (1999). Rule 4-3 was amended on October 2, 2002, to require that in all cases, the trial court shall set a return date. Amended Rule 4-3 further provides that an appellate court may not infer a return date from the record. We note that the changes to Rule 4-3 have no bearing on our analysis in this case.

7

June 8, 2000, the date Grillette properly filed his supervisory writ application to the Louisiana Court of Appeal, qualifies under AEDPA's relevant tolling provision as "time during which a properly filed application for State post-conviction . . . review . . . is <u>pending</u>."[5]  28 U.S.C. § 2244 (d) (2) (emphasis added).  If so, AEDPA's limitations period would be tolled during this interval, making Grillette's § 2254 petition timely.  If, on the other hand, Grillette's state application ceased to be "pending" during the period from May 19, 1999, to June 8, 2000, the limitations period would not be tolled and, consequently, the federal courts would have no jurisdiction to entertain his federal habeas petition.

In determining whether Grillette's state habeas application for state post-conviction relief was "pending" within the meaning of § 2244(d)(2), we must look to whether it was filed in compliance with Louisiana's timeliness requirements.  See <u>Saffold</u>, 536 U.S. at 225-26; <u>Cook v. Morrill</u>, 783 F.2d 593, 598 (5th Cir. 1986).  In <u>Saffold</u>, the Supreme Court established that an unambiguous ruling by the state court that a state habeas application is untimely, regardless of whether the state court

<hr>

[5]We note that the State argues that because Grillette's June 8, 2000, application for supervisory writs was filed after the 30-day deadline imposed by Rule 4-3, the application was not "properly filed" as required to entitle him to statutory tolling under § 2244 (d) (2).  This argument, however, is foreclosed by our decision in <u>Melancon</u>, in which we held that an application that is untimely under Louisiana Courts of Appeal Rule 4-3 is nevertheless "properly filed" because Rule 4-3's deadline is not without exceptions, but rather "allows the Court of Appeal to consider an application that was not timely filed on the merits if there is a 'showing that the delay in filing was not due to the applicant's fault.'" <u>Melancon</u>, 259 F.3d at 405.  As in <u>Melancon</u>, "[b]ecause Rule 4-3 entitled the Court of Appeal to consider [Grillette's] application on the merits and the Court of Appeal did [so]," Grillette's June 8, 2000, "application was 'properly filed' in state court." <u>See id.</u>  The only question for our consideration on appeal, therefore, is whether Grillette's state  habeas application remained "pending" under § 2244 (d) (2) and therefore tolled the limitations period during the interval between the trial court's denial of Grillette's state habeas application and his filing, nearly thirteen months later, of his supervisory writ application to the Louisiana Court of Appeal**.**

8

nonetheless reached the merits, ends our inquiry, because a state application ceases to be pending when the time for appellate review expires. 536 U.S. at 226. In this case, the Louisiana Court of Appeal's minute order neither indicated that Grillette's June 8, 2000, filing of his supervisory writ was untimely, nor did it expressly state that it was timely. Rather, the Louisiana Court of Appeal succinctly disposed of the application "on the merits," stating simply: "**Writ Denied.** On the showing made, the exercise of supervisory jurisdiction is not warranted. See *State v. Penns*, 99-2916 (La. 12/20/99), 1999 WL 1297473." State v. Grillette, No. 34173-KW (La. Ct. App. 2d Cir. 6/23/00) (unpublished).

Citing Saffold, Grillette argues that the Louisiana Court of Appeal's consideration of his writ application "on the merits" evidences that court's implicit determination that the application was timely filed pursuant to Rule 4-3, and that principles of comity and state exhaustion requirements dictate that this Court defer to the state appellate court's construction of its own timeliness rules. See Saffold, 536 U.S. at 225-26. Grillette further asserts that this Court's decision in Dixon v. Cain, 316 F.3d 553 (5th Cir. 2003) (per curiam), compels the conclusion that his writ application was in fact timely under Rule 4-3 because he gave timely oral notice to the trial court of his intent to file a supervisory writ application and the trial court, by setting a return date beyond Rule 4-3's 30-day period, or until June 8, 2000, impliedly extended the return date under extenuating circumstances that were due to no fault of his own. The State counters that Saffold forecloses Grillette's argument that the Louisiana Court of Appeal's consideration of his writ application "on the merits" proves that his application was timely. The State further argues that Melancon, relied upon by the magistrate judge, is "on all fours" with this case, and therefore Grillette's application ceased to be "pending" in state court when he failed to file his supervisory writ application within Rule 4-3's 30-day time limit

9

and failed to file a motion for and obtain an extension on the return date. After thoroughly reviewing the record and pertinent authorities, we find that resolution of the statutory tolling issue before us lies between this Court's decisions in Melancon and Dixon, and that the issue must be resolved in favor of Grillette.

In Melancon, approximately five months elapsed between the trial court's December 9, 1997, post-conviction relief and Melancon's May 8, 1998, filing of his supervisory writ application to the Louisiana Court of Appeal. Melancon, 259 F.3d at 404. Melancon, appearing pro se, did not give notice of his intent to seek a writ until sometime well after Rule 4-3's 30-day deadline had expired. See Dixon, 316 F.3d at 556 (discussing the record and briefs presented in Melancon). The trial court signed the notice of intent on either May 6th or May 8th, 1998, and set the return date for May 8th, 1998. See id. In its opinion, the Louisiana Court of Appeal noted that the writ application "appeared to be untimely" because there was no indication that any extension on the return date had been granted. Id. (citing State v. Melancon, No. 98-K-1139 (La. Ct. App. 4th Cir. 8/13/98) (unpublished)). Nonetheless, because the appellate court ordered an evidentiary hearing in response to Melancon's writ, it proceeded to dispose of his claim "on the merits." Melancon, 259 F.3d at 401, 404. A panel of this Court held that Melancon's state habeas application ceased to be pending when the 30-day period for seeking a writ had expired, reasoning that at no time during that period had Melancon given notice of his intent to seek a writ, asked the court to set a return date, or requested an extension on the return date. Id. at 407. On the facts presented, the four untolled months between January 8, 1998, when the 30 days allotted by Rule 4-3 passed, and the filing of Melancon's supervisory writ rendered his § 2254 petition untimely.

In Dixon, by contrast, we held that the applicant's federal habeas petition was timely because his state habeas application remained pending throughout the interval from the trial court's denial of post-conviction relief to his filing of his § 2254 petition, even though his application for supervisory writs was filed after the 30-day deadline ordinarily imposed by Rule 4-3. Dixon, 316 F.3d at 556. In that case, Dixon timely filed his notice of intent to seek a supervisory writ approximately one week after the trial court's August 12, 1999, denial of his state habeas application. Id. at 555. In his notice, Dixon requested that the trial court "set a [return date of a] reasonable time of not less than sixty (60) days from the filing of this notice for the writ application to be filed with the First Circuit Court of Appeal." Id. The trial court set the return date for October 29, 1999. Dixon did not file his supervisory writ application until October 20, 1999, more than 30 days after the trial court's denial of post-conviction relief but within the time allotted by the trial court. Id. We held that Dixon's application was timely filed, reasoning that "Louisiana courts consider the trial court's setting of a return date later than thirty days to be an implicit extension of the return date in accordance with Rule 4-3." Id. (citing Brock v. Duhe, 521 So.2d 1162, 1162 (La. 1988)). We further observed that, "[t]his is at least so when the filing of the return date is pursuant to the appellant's timely request for a return date beyond the thirty day limit, as it was in Dixon's case . . . ." Id. (quoting Watts v. Dorignac, 681 So.2d 955, 956 n.2 (La. Ct. App. 1st Cir. 1996) (stating that "'[i]f the notice of intent to seek writs and/or a motion and order requesting a return date was filed with the trial court within 30 days of the ruling at issue, this Court has interpreted a return date set outside the 30 day period as an implicit extension of the return date by the trial court'")). Accordingly, we concluded that "[b]ecause Dixon timely both sought and obtained an extension of the appeal period, his application

11

to the Louisiana Court of Appeal was not only timely filed but was never in an untimely status, and his case is thus distinguished from *Melancon*." Id. at 556. We explained that in Melancon:

> [T]here [was] nothing [in the record or briefs] to indicate . . . that the prisoner there ever, or ever during the thirty days next following the trial court's December 9, 1997, denial of relief, sought any extension . . . of the thirty day period provided in Rule 4-3 or filed any notice of intent to seek writs and/or any motion and order requesting a return date. Thus, in *Melancon* when the thirty days expired there was neither any order extending or fixing the return date to or at a time later than the thirty day period nor was there pending any undisposed of motion for any such relief, and no supervisory writ application had been filed. Thus Melancon's writ application ceased to be pending at the expiration of the thirty days.

Dixon, 316 F.3d at 556 (emphasis added).

In this case, Grillette, like Melancon, neither filed his supervisory writ within the 30-day period ordinarily allotted by Rule 4-3 nor obtained a definite return date within the 30-day period ordinarily allotted by Rule 4-3. However, the circumstances presented in Melancon differ significantly from those before us. First, in contrast to Melancon, the instant case presents extenuating circumstances that prevented Grillette from timely filing his supervisory writ application. Rule 4-3 authorizes the trial court, "[u]pon proper showing," to extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return period." Rule 4-3 further provides that "[a]n application not filed in the appellate court within that time so fixed or extended shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault."

It is undisputed that for an extended period between April, 1999, and June 8, 2000, Grillette's trial record was misplaced by the Clerk of Court of DeSoto Parish, which at the time was undergoing a major renovation requiring the relocation of the Clerk's office and its files. When it became obvious, despite Grillette's diligent efforts, that these records were not forthcoming, Grillette requested that the state trial court judge order the clerk to produce the documents. In addition, Grillette's trial

12

counsel, who was imprisoned at the time on drug charges, refused to turn over his personal files to Grillette's new counsel.

It is further undisputed that following the trial court's partial denial of Grillette's application, Grillette timely both gave oral "notice of his intent to take a [w]rit on the two convictions left standing,"[6] and received oral confirmation from the trial judge that "a return date would be set when the documents [required by Rule 4-5 to complete his writ application] were located and produced."[7] Grillette explained that he did not find it necessary to have a definite return date set at the time he conferred with the trial judge as the judge had assured him that he would set a return date and that Grillette's writ application would be considered timely. Unlike Melancon, Grillette presented evidence (in the form of Judge Beasley's letter) that the trial judge was aware of his intention to seek writs and of his efforts to obtain the records necessary to proceed with the writ application. Judge Beasley further confirmed in his letter that he believed "it appropriate to extend the return date until June 8, 2000."

---

[6]We note that at no time has the State challenged Grillette's assertion that he gave oral notice, or the timeliness of that notice.

[7]As it was not known just when the portions of the record required for the writ could be obtained, the trial court could not then specify a particular return date. During oral argument, Grillette's counsel stated that he believed that Judge Beasley later did in fact set a return date for June 8, 2000, explaining that he was unsure of where that order granting an extended return date appeared in the record but that it would have been entered in December of 1999, around the time the records were located. The State, though not contending that a return date was not in fact set (albeit perhaps informally) for June 8, 2002, argues that there should be a brightline rule requiring such extensions to be in the record and that, in any event, even Grillette concedes that the return date was not set until months after the 30-day period allotted by Rule 4-3 expired. As demonstrated below, however, Louisiana courts have declined to construe Rule 4-3 so narrowly under circumstances closely analogous to those in this case.

13

Notwithstanding the circumstances described above, the State argues that because Grillette, like Melancon, never _requested_ an extended return date, he could not have obtained an extension and thus his failure to file his writ application within Rule 4-3's 30 day period rendered his application untimely. While we recognize that on its face, Rule 4-3 imposes an affirmative duty on the applicant to request an extension by motion filed within the "original" 30-day "or extended period," we are unpersuaded that the Louisiana Supreme Court would read Rule 4-3 to preclude finding that a trial court had granted an extension, whether express or implied, in the absence of such a motion. We note that under Rule 4-3, the trial court, too, had an affirmative duty to set a return date "of a reasonable time . . . not to exceed thirty days" upon being notified by the applicant of his intent to seek writs, and that it is the trial court's assurances that it would set an extended return date, provided to Grillette in lieu of timely setting any definite return date, that contributed to the breakdown in the process in this case. See Sizeler Hammond Square LP v. City of Hammond, 827 So.2d 410, 410 (La. 2002). That Grillette timely gave oral notice to the trial court of his intent to seek writs and the trial court, so notified, set a return date beyond the 30-day period prescribed in Rule 4-3, takes this case outside the realm of Melancon and places it within that of Dixon. Although, as Grillette concedes, his compliance with Rule 4-3 is less easily ascertainable than in Dixon, we are persuaded that Louisiana courts would view Grillette's timely provision of oral notice and the trial court's timely assurances that it would set an extended return date as satisfying the procedural requirements in Rule 4-3.

Although authority is sparse, in analogous circumstances Louisiana courts have declined to penalize the applicant and have considered writs filed beyond the 30-day period timely where "it was the trial court who violated Rule 4-3." See Barnard v. Barnard, 675 So.2d 734, 734 (La. 1996)

14

(holding that an application filed outside the 30-day period but within the delay set by the trial court is timely). Thus, the Louisiana Supreme Court has held that where a relator timely gives oral notice of his intent to seek a supervisory writ and the trial court sets the return date more than thirty days after the ruling at issue, an application filed within the extended delay period is timely. See Sizeler Hammond Square LP, 827 So.2d at 410 (citing Barnard, 675 So.2d at 734). Louisiana's highest court has also held that a writ application filed within the 30-day period is timely where the relator "orally requested writs and the trial court granted the request but did not fix the return date," reasoning that "the trial court could have fixed the return date up to thirty days from the date of the ruling at issue under. . . Rule 4-3." Rambo v. Willis-Knighton Bossier Health Center, 766 So.2d 1262, 1262-63 (La. 2000). More recently, in Foxy's Health & Racquet Club v. Allbritton, 859 So.2d 151 (La. Ct. App. 1st Cir. 2003), the Louisiana First Circuit granted an applicant's motion for an extended return date even though the request had been filed after the 30-day deadline on the basis that the delay was through no fault of the applicant. 859 So.2d at 152. As in this case, in Foxy's Health & Racquet Club, the trial court's oral assurances to the applicant and the court's mishandling of the record contributed to the Rule 4-3 violation. See id. In that case, defense counsel asserted that he was told by the trial court that any further appeal would be to the First Circuit and would be treated as an appeal de novo. Id. The trial court assigned a return date of February 13, 2003. Id. Defense counsel contended that when he contacted the court to find out when he should submit a brief, the court informed him that he should wait until after the record was lodged and a docket number assigned, whereupon the court would notify defense counsel of the filing deadline. Id. After over two months passed, he discovered that the record had never been lodged with the appellate court. Id. A member of the district judge's staff told defense counsel that the matter was being treated as

15

a writ, and that he had missed the return date. Id. Defense counsel filed an out-of-time motion to extend the return date, which the trial court denied. Id. On supervisory review, the appellate court granted his motion to extend the return date on the basis that the delay was caused through no fault of the applicant, citing Rule 4-3. Id.

Second, at no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3. Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred. We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending." See Saffold, 536 U.S. at 226 (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way"). Rule 4-3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault." Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.

Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. See, e.g., Carter v. Rhea, 785 So. 2d 1022, 1022 (La. Ct. App. 4th Cir. 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); Lawyer v. Succession of Kountz Through Kupit, 703 So.2d 233,

16

233 (La. Ct. App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); <u>Watts v. Dorignac</u>, 681 So.2d 955, 955 (La. Ct. App. 1st Cir. 1996) ("WRIT NOT CONSIDERED").  Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

Because Grillette did give timely oral notice to the trial court of his intent to seek a writ and relied on the trial court's timely oral assurances that it would later extend the return date under extenuating circumstances which were indisputably not attributable to any fault of Grillette, we conclude that, as in <u>Dixon</u>, the trial court extended the return date to June 8, 2002.  Thus Grillette's application was never in an untimely status and remained "pending" from May 19, 1999, when the otherwise applicable 30-day deadline expired, to May 11, 2001, when the Louisiana Supreme Court denied his writ application without assigning reasons.  Grillette's April 11, 2002, federal habeas petition, filed within AEDPA's one-year limitations period, was therefore timely.

CONCLUSION

For the foregoing reasons, we hold that, under the particular and highly unusual circumstances presented, Grillette's state post-conviction relief proceedings remained "pending" and thereby tolled the limitations period throughout this interval, rendering his § 2254 application timely.  Accordingly, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.