# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2013

Lyle W. Cayce
Clerk

No. 11-30794

SIVORIS SUTTON,

Petitioner-Appellant,

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and HIGGINBOTHAM and JONES, Circuit Judges.

PER CURIAM:

On July 19, 2011, the district court dismissed the habeas petition of Petitioner-Appellant, Sivoris Sutton, as untimely under the one-year statute of limitations prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). *See* No. 10-1240, 2011 WL 2937207 (July 19, 2011 E.D. La.) (unpublished) (adopting magistrate's report, 2011 WL 2937214 (Mar. 17, 2011 E.D. La.) (unpublished)). The court entered final judgment against Sutton on the same day. For the reasons provided herein, we AFFIRM.

## I. BACKGROUND

**A.    Facts and Proceedings Preceding Filing of the Instant Petition**

No. 11-30794

Sutton is a Louisiana state prisoner, who was convicted of two counts of second-degree murder and is serving a life sentence without parole. He was convicted on February 6, 1993. On January 31, 1996, the intermediate state appellate court affirmed his convictions and sentence on direct appeal. At that point, Sutton's trial counsel ("Pastor") withdrew from the representation.[1]

Thereafter, Sutton proceeded *pro se.* He filed a joint petition for certiorari to the La. Supreme Court with co-defendant Charlie Water. Water signed the petition, but Sutton did not.

The La. Supreme Court denied certiorari on June 7, 1996, in a one-word order that simply stated "Denied." *See State v. Water*, 674 So. 2d 980 (La. June 7, 1996). The La. Supreme Court only addressed Water in its denial of certiorari. Sutton asserts that he did not discover this fact until 1999, upon his retention of new counsel ("Harvey").[2]

On February 9, 1999, Sutton moved the La. Supreme Court for permission to file an untimely petition for certiorari. The La. Supreme Court denied this motion on June 4, 1999. Its one-paragraph order stated as follows:

> Motion to enroll as counsel and as counsel pro hac vice granted; motion to file out-of-time petition for writ of certiorari denied on the showing made. Even assuming that relator sought relief in [*State v. Water*, 674 So. 2d 980], because that application lacked merit . . . relator shows no grounds for relief.

*State v. Sutton*, 743 So. 2d 1243 (La. June 4, 1999). The record does not reflect that Sutton sought certiorari from the U.S. Supreme Court on his direct appeal.

---

[1] There was no impediment under Louisiana's Rules of Professional Conduct to Pastor withdrawing upon the intermediate state appellate court's denial of Sutton's direct appeal.

[2] Harvey was admitted in Georgia and represented Sutton *pro hac vice.*

No. 11-30794

On the same day that Sutton moved the La. Supreme Court for permission to file the untimely petition on direct appeal, February 9, 1999, Sutton filed his state habeas application. On July 21, 2008, the trial-level state habeas court granted partial relief on Sutton's underlying claim for ineffective assistance of counsel ("IAC") at trial. However, the intermediate state appellate court reversed the partial grant of relief. The La. Supreme Court denied Sutton's application for supervisory writ on February 26, 2010.

At some point during this state habeas process, Harvey withdrew. Sutton alleges that the Supreme Court of Georgia disciplined him for doing so.[3]

**B.     Facts and Proceedings Following Filing of the Instant Petition**

Sutton filed the instant (federal) habeas petition on April 6, 2010, pursuant to 28 U.S.C. § 2254. Respondent-Appellee, Burl Cain, responded that the petition was untimely under the AEDPA. At that point, Sutton retained his present habeas counsel ("Bartholomew"). Sutton made two arguments in reply.

*First*: Sutton argued that the La. Supreme Court had implicitly adjudicated his February 9, 1999 motion, for permission to file an untimely petition for certiorari, on the merits. Accordingly, Sutton submitted that his conviction had not become "final" for purposes of AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(a), until the La. Supreme Court denied his motion on June 4, 1999. Since the AEDPA limitations period would have been tolled regardless during the pendency of his state-level habeas proceedings, his federal petition, thus, would have been timely filed. In support of this position, Sutton analogized to the U.S. Supreme Court's decision in *Jimenez v.*

---

[3] Sutton devotes a significant proportion of his briefing to Harvey's alleged "sudden withdrawal" and subsequent disciplining by the Georgia Supreme Court. Indeed, Sutton likens Harvey's conduct to the attorney abandonment that the U.S. Supreme Court admonished in *Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912, 922-27 (2012). However, as discussed below, Harvey's involvement occurred entirely after the one-year AEDPA limitations period already had run. Therefore, it has no bearing on this appeal.

No. 11-30794

*Quarterman*, 555 U.S. 113, 121 (2009). Sutton asserted underlying claims of (i) actual innocence; (ii) IAC; and (iii) state misconduct.

*Second*: Sutton also argued that he was entitled to equitable tolling. He asserted the same underlying claims, with the addition of a claim of (iv) injustice pertaining to the La. Supreme Court's failure to address him in its June 7, 1996 denial of Water's petition for certiorari, which Sutton had jointly filed with Water but did not sign.[4]

Upon the magistrate's recommendation, the district court rejected both of Sutton's arguments. On July 19, 2011, the district court dismissed Sutton's petition with prejudice as untimely and entered final judgment against Sutton. On July 21, 2011, the district court denied a certificate of appealability ("COA").

Sutton timely appealed the denial of a COA. We granted a COA on May 11, 2012.

## II. STANDARD OF REVIEW

"An order dismissing a habeas application as time-barred by AEDPA is subject to *de novo* review." *Ginsberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002) (per curiam) (citation omitted). A district court's denial of AEDPA equitable tolling is reviewed for abuse of discretion. *See Henderson v. Thaler*, 626 F.3d 773, 779 (5th Cir. 2010) (citations omitted).

## III. DISCUSSION

Sutton raises two issues on appeal:

> (A) In the event the AEDPA's one-year limitations period
> had run at the time Sutton filed his state habeas

---

[4] We note that, at the time of the briefing in this appeal, it was an open question in this Circuit from a categorical standpoint whether a claim of actual innocence even could be an underlying basis for equitable tolling. Recently, in *McQuiggin v. Perkins*, the U.S. Supreme Court answered that question in the affirmative. *See* No. 12-126, ___ U.S. ___, ___ S. Ct. ___, 2013 WL 2300806 (May 28, 2013).

application and subsequent federal habeas petition, whether we should grant his request for equitable tolling.[5]

(B) Whether the La. Supreme Court's denial of Sutton's motion to file an untimely petition for certiorari on direct appeal amounted to an adjudication on the merits, such that Sutton's conviction did not become "final" for purposes of the AEDPA's one-year limitations period until after that denial, thereby preserving the timeliness of Sutton's eventual AEDPA petition.[6]

We address the equitable tolling issue first and the timeliness issue second.

## A.     Issue One:  Equitable Tolling

While the parties dispute whether our COA certified the equitable tolling issue, we pretermit a determination of that question.  Assuming *arguendo* that our COA certified this issue, Sutton nonetheless fails to satisfy the U.S. Supreme Court's test for equitable tolling.

A petitioner requesting equitable tolling must show that (i) "he has been pursuing his rights diligently"; and (ii) "some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted). Here, the La. Supreme Court denied the unsigned joint petition on June 7, 1996, addressing only Water.  Sutton did not seek clarification of that anomaly until

---

[5] Categorically, Sutton may pursue equitable tolling because AEDPA's limitations period is not jurisdictional. *See Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 2560-62 (2010).

[6] AEDPA's federal limitations period is tolled during the pendency of state habeas proceedings below.  To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became "final" and the date the petitioner filed his state habeas application; and (ii) the date the state habeas process concluded and the date the petitioner filed his federal habeas petition.  Here, if Sutton's motion did not affect the finality of his conviction, it otherwise became "final" fourteen days after the intermediate state appellate court affirmed on direct appeal, on January 31, 1996.  *See* La. Code Crim. Proc. art. 922.  As such, the AEDPA's one-year limitations period would have run well before Sutton filed his state habeas application on February 9, 1999.

1999, when he filed his February 9 motion. Accordingly, Sutton was not "diligent" within the meaning of *Pace*.

Nor has Sutton made the requisite showing of "extraordinary circumstances." "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam) (citation omitted). A "garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 130 S. Ct. at 2564 (citations and internal quotation marks omitted).

"As a general rule, equitable tolling operates only in rare and exceptional circumstances where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (alteration, citations, and internal quotation marks omitted). "Equitable tolling thus applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Id.* (citations and internal quotation marks omitted). "As a consequence, neither excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Id.* (citation and internal quotation marks omitted).

Here, the joint petition that Sutton failed to sign had only one signature line, which Water's signature occupied. Far from actively misleading Sutton, the state here simply failed to anticipate Sutton's unawareness of the need to file his own petition. This need should have been clear to Sutton on account of the one signature line on the form and, in any event, ignorance of the law is insufficient to justify equitable tolling. *See id.* (citation omitted). Accordingly, no "extraordinary circumstance" stood in the way of Sutton filing a timely federal habeas petition.

No. 11-30794

For these reasons, we deny Sutton's request for equitable tolling of the AEDPA's one-year limitations period. We need not reach the merits of the four underlying bases of Sutton's request.

## B.    Issue Two:  Timeliness

Sutton argues that, on account of surplus language in the La. Supreme Court's denial of his motion to file an untimely petition for certiorari, our decisions in *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001), and *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765 (5th Cir. 2004), compel us to treat the denial as an adjudication on the merits, thereby preserving the timeliness of his eventual AEDPA petition. We are unpersuaded by this argument.

*Melancon* and *Grillette* are AEDPA statutory tolling cases that hinged on the operation of Louisiana Courts of Appeal Rule 4-3. Rule 4-3 sets a thirty-day deadline to appeal a denied state habeas application to an intermediate state appellate court (i.e., to apply for a supervisory writ). Notwithstanding the thirty-day deadline, the Rule expressly states that:

> Upon proper showing, the trial court or the appellate court may extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return date period. An application not filed in the appellate court within the time so fixed or extended shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault.

The primary import of *Melancon* and *Grillette*, even though they arose in the 28 U.S.C. § 2244(d)(2) statutory tolling context, rather than in the § 2244(d)(1) "finality" context, is that they provide guidance as to when an ambiguous state court order amounted to a merits adjudication.

### 1.    *Melancon*

7

No. 11-30794

In *Melancon*, a federal habeas petitioner had filed an application for supervisory writ that was approximately five months untimely. 259 F.3d at 403. Similar to here, the intermediate Louisiana appellate court ambiguously denied the application as both untimely and as failing on the merits. *Id.* Specifically, the intermediate appellate court stated both that the application "appeared to be untimely" and that it would dispose of the case "on the merits." *See Grillette*, 372 F.3d at 772 (citations omitted) (discussing *Melancon*).

The petitioner subsequently filed a federal petition, which the district court dismissed as time-barred under the AEDPA. *Melancon*, 259 F.3d at 403-04. We held that AEDPA's statute of limitations had tolled during the literal pendency of the state habeas process. Thus, the petitioner's untimely filing of his state application for supervisory writ did not automatically render his subsequent federal petition untimely as well, in light of the intermediate appellate court's ambiguous order—which may have been on the merits. *Id.* at 405. We directly connected this logic to Rule 4-3, which would have granted the intermediate court discretion to adjudicate the untimely application even if otherwise time-barred. *Id.*

Nevertheless, we ruled that the AEDPA limitations period had not tolled during the approximately five months that the petitioner had waited to file his application for supervisory writ (five months beyond the timely period for filing such an application), even though the limitations period had subsequently tolled upon issuance of the intermediate appellate's court ambiguous order (and for the remainder of the state habeas process). *Id.* at 406-07.

### 2.    *Grillette*

*Grillette* came before us on a somewhat similar posture to *Melancon*. However, unlike in *Melancon*, the intermediate Louisiana appellate court had not expressly stated that the application "appeared to be untimely." *Grillette*,

372 F.3d at 775. It had done so only by implication and, otherwise, had disposed of the application "on the merits" in its ambiguous order. *Id.*

As in *Melancon*, we treated the state court's ambiguous order as turning on the merits by operation of Rule 4-3. However, unlike in *Melancon*, we proceeded to treat the AEDPA limitations period as tolled during the period before the petitioner had filed his putatively untimely application for supervisory writ.

We explained that express adjudication "'on the merits' is not by itself conclusive proof" that an application's denial had not turned on timeliness. *Grillette*, 372 F.3d at 775 (citing *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002) (explaining that there are legitimate reasons a state court might provide alternative merits grounds for denying a clearly stale application, including to show a *pro se* prisoner "that it was not merely a procedural technicality that precluded him from obtaining relief")). We added, however, that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." *Id.* (citations omitted).

Thus, we distinguished *Melancon* because, in *Grillette*, the state court had not used the express words "appeared to be untimely." Therefore, the petitioner's "application was never in an untimely status," and the AEDPA limitations period had tolled throughout the entire state habeas process. *Grillette*, 372 F.3d at 776. In our conclusion, we expressly cautioned that *Grillette* was limited to "the particular and highly unusual circumstances presented." *Id.*

### 3.    *Jimenez*

A few years after *Melancon* and *Grillette*, the U.S. Supreme Court issued its decision in *Jimenez*. In *Jimenez*, a state habeas court allowed an applicant to file an untimely direct appeal after the applicant had successfully argued that he had been denied the opportunity to file a *pro se* appellate brief to accompany

No. 11-30794

his exiting attorney's *Anders* brief. *Jimenez*, 555 U.S. at 115-16; *see also Anders v. California*, 386 U.S. 738 (1967). The applicant subsequently appealed, and his conviction was affirmed. *Id.* at 116. At issue before the Supreme Court was whether the applicant's conviction had become "final," for purposes of AEDPA's statute of limitations, at the time he had completed his first iteration of direct review or at the time he had completed his second iteration of direct review. *Id.* at 119. In a "narrow decision," grounded in the "plain language of § 2244(d)(1)," the unanimous Court held that:

> [W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A). In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal.

*Id.* at 120-21 (expressly noting that the "plain language of § 2244(d)(1)" encompasses "AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review the claim and to correct any constitutional violation in the first instance" (alteration, citations, and internal quotation marks omitted)).

### 4. Analysis

#### a. *Melancon* and *Grillette*

Cain (Respondent-Appellee) argues that *Melancon* and *Grillette* are distinguishable because they hinged on Rule 4-3, which governs the intermediate Louisiana appellate courts. Here, by contrast, the court issuing the ambiguous order was the La. Supreme Court. The corresponding La. Supreme

No. 11-30794

Court Rule succinctly states: "No extension of time . . . will be granted." Rule 10, § 5(a).

We agree with Cain that Rule 4-3 is inapplicable. Therefore, *Grillette* and *Melancon* do not control because those cases treated the ambiguous state court order as an adjudication on the merits largely (if not only) in light of Rule 4-3's allowance for discretion.

Moreover, unlike the state court in *Grillette*, the La. Supreme Court here expressly stated: "motion to file *out-of-time* petition for writ of certiorari denied on the showing made." *Sutton*, 743 So. 2d at 1243 (emphasis added). While the La. Supreme Court proceeded to state that Sutton's "application lacked merit," *id.*, that statement was not dispositive in light of *Saffold*, 536 U.S. at 225-26.

For these reasons, the La. Supreme Court did not adjudicate Sutton's motion on its merits. Thus, even were *Jimenez* applicable, Sutton's habeas petition would not have been timely under the AEDPA.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the final judgment of the district court, which dismissed Sutton's habeas petition with prejudice as untimely under the AEDPA.