REVISED JUNE 19, 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 01-50400
_____

CESAR ROBERTO FIERRO,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____
June 13, 2002

Before KING, Chief Judge, and JOLLY and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In 1980, Cesar Roberto Fierro was convicted and sentenced to death for the murder of Nicolas Castanon. The conviction was based, in part, on Fierro's written confession. Before trial, Fierro unsuccessfully sought to suppress the confession on the ground that it was obtained by holding his mother in a Mexican jail until he admitted to the murder. After a direct appeal and after two petitions for post-conviction relief, Fierro filed a third post-conviction petition in Texas state court based on evidence that Detective Al Medrano, the El Paso police officer who obtained the confession from Fierro, lied in his testimony during the

suppression hearing. The state habeas court found that Medrano had indeed presented materially false testimony, but the Texas Court of Criminal Appeals denied Fierro's petition because it found the false testimony harmless.[1] After receiving authorization from this Court, Fierro then filed a successive petition for a writ of habeas corpus in the Western District of Texas. The district court dismissed the petition because it was time-barred and, alternatively, because the factual predicate for the petition could have been discovered earlier through the exercise of due diligence.

The question we address here is whether the district court erred in holding that Fierro's successive habeas petition is barred by the one-year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). We conclude that the petition was filed outside the applicable statute of limitations. We further conclude that Fierro has not demonstrated that equitable tolling of the limitations period is warranted in this case. Accordingly, we affirm the district court's dismissal of Fierro's petition.[2]

---

[1] Fierro has never argued that the state knowingly presented perjured testimony at trial or deliberately withheld from Fierro evidence of Medrano's perjury.

[2] Because we find that the district court's judgment should be affirmed on this ground, we do not reach the district court's alternative finding that the factual predicate for Fierro's claim -- that is, the evidence of Medrano's perjury at the suppression hearing -- could have been discovered by Fierro's trial counsel through the exercise of due diligence.

Although the facts of this case have been well documented during the course of the extensive proceedings in state and federal court, some background is required to place the issue before us in context.  In 1979, the State of Texas charged petitioner Cesar Roberto Fierro with the murder of Nicolas Castanon, an El Paso taxicab driver, based on the statement of an alleged eyewitness.  The eyewitness, Geraldo Olague, told the police that he and Fierro were riding in Castanon's cab when Fierro suddenly shot Castanon in the back of the head.  According to Olague, Fierro removed the body from the cab and took Castanon's watch and wallet.  Fierro and Olague then drove the cab across the Mexican border and abandoned it in Juarez.

Relying on Olague's statement, El Paso police detective Al Medrano retrieved Fierro from a nearby jail on August 1, 1979 and questioned him.  While Fierro was in police custody, he signed a statement in which he confessed to Castanon's murder.  Before his trial for capital murder, however, Fierro moved to suppress the statement, arguing that he had confessed involuntarily.  According to Fierro's testimony at the suppression hearing, Medrano told Fierro during the interrogation that Mexican police had raided his mother's residence in Juarez that morning and had taken her and Fierro's step-father into custody.[3]  Fierro also testified that

---

[3] To prove that the Juarez police were actually holding Fierro's mother, Medrano allegedly showed Fierro letters that he

Medrano advised him that the police would detain his mother and step-father in the Juarez jail until he confessed to Castanon's murder. Fierro thus asserted that he confessed to the murder only to secure the release of his mother and step-father.[4]

To refute Fierro's testimony, Medrano testified at the suppression hearing that he was unaware of the arrest of Fierro's mother in Juarez when he interrogated Fierro.[5] Thus, Medrano asserted that he could not have told Fierro about the raid on his mother's house or about her detention in the Juarez jail. Medrano conceded that he met Juarez Police Commandante Jorge Palacios for breakfast on the morning of the raid, but Medrano maintained that Palacios told him only where Fierro could be found.

Accepting Medrano's account, the trial court rejected Fierro's argument that his confession was involuntary and admitted the confession into evidence at trial. Based on Fierro's confession and Olague's eyewitness testimony, a jury convicted Fierro of Castanon's murder and sentenced him to death in February 1980. On direct appeal, the Texas Court of Criminal Appeals affirmed the

_____

and his brother had sent to her. Fierro's mother similarly testified that the Juarez Police raided her apartment early in the morning of August 1, 1979 and took two letters written by her sons.

[4] Fierro presented evidence that the Juarez police had a well-known reputation for torturing prisoners.

[5] At the suppression hearing, Medrano testified that it was Fierro who raised the possibility that his mother was being held by the Mexican authorities. Medrano also testified that he did not possess any letters recovered from Fierro's mother.

4

trial court's ruling on the voluntariness of Fierro's confession. See Texas v. Fierro, 706 S.W.2d 310, 316 (Tex.Cr.App. 1986). Represented by his appellate counsel, Fierro raised the same claim concerning the voluntariness of his confession in a petition for post-conviction relief in state court and in his first federal habeas petition. Relying primarily on the trial court's credibility determinations during the suppression hearing, the state habeas court, the Texas Court of Criminal Appeals, the federal habeas court, and this Court rejected Fierro's claim. See Fierro v. Lynaugh, 879 F.2d 1276 (5th Cir. 1989), cert. denied sub nom Fierro v. Collins, 494 U.S. 1060 (1990).

In 1994, Fierro retained new counsel and filed a petition for post-conviction relief in state court based on the discovery of new evidence relating to the voluntariness of his 1979 confession.[6] During the evidentiary hearing in the state habeas court, Fierro presented a police report -- found in the El Paso police investigative file -- that was completed by Detective Medrano on August 1, 1979.[7] The report documents a telephone conversation between Medrano and Palacios at 5:00 a.m. that morning in which Palacios "stated that they had raided the house [of Fierro's

_____

[6] In 1990, Fierro also filed a successive petition for post-conviction relief challenging the constitutionality of the Texas death penalty statute. The state habeas court, the Texas Court of Criminal Appeals, the district court, and this Court all rejected this claim as well.

[7] Medrano was deceased at the time of the 1994 state habeas proceedings.

5

parents] this morning . . . and had in custody the mother of the suspect, CESAR FIERRO, her name being SOCORRO REYNA, and her common law husband, ALFREDO MURGA." According to the report, Palacios also told Medrano that Fierro was then in custody in an El Paso jail.[8]

Based on this evidence, the state habeas trial court found that Medrano's testimony at the 1979 suppression hearing "regarding the nature and extent of cooperation between the El Paso police and the Juarez police in this case" was false and that Medrano "did have information that the Defendant's mother and step-father had been taken into custody by the Juarez police with the intent of holding them in order to coerce a confession from the Defendant." The court concluded "[t]hat there is a strong lik[e]lihood that the Defendant's confession was coerced by the actions of the Juarez police and by the knowledge and acq[u]iescence of those actions b[y] Det. Medrano." The court therefore recommended a new trial.

The Texas Court of Criminal Appeals adopted the state habeas court's factual findings and agreed that Fierro's "due process rights were violated by Medrano's perjured testimony." Ex parte Fierro, 934 S.W.2d 370, 371-72 (Tex.Cr.App. 1996), cert. denied,

---

[8] Fierro also presented the testimony of Palacios, which was obtained through a letters rogatory proceeding conducted by a judge in Mexico in 1994. Contradicting Medrano's suppression hearing testimony, Palacios testified that he informed Medrano of Fierro's location during their 5:00 a.m. telephone conversation (rather than at their later breakfast meeting) and that he never spoke to Fierro during the investigation into Castanon's murder.

6

521 U.S. 1122 (1997). A majority of the court nevertheless denied Fierro relief because, "given Olague's eye-witness testimony and the lack of any real reason to doubt his credibility, it is more probable than not that the outcome of applicant's trial would have been the same absent the confession." Id. at 376.

After an unsuccessful petition for certiorari in the Supreme Court, Fierro filed a motion in this Court on October 20, 1997 seeking a stay of his execution and authorization to file a successive habeas petition. The panel granted the motion on November 11, but Fierro did not file his habeas petition in the district court until February 27, 1998. The district court accepted the state habeas court's findings of fact concerning Medrano's false testimony at the suppression hearing but ultimately dismissed Fierro's petition as barred by the statute of limitations governing successive petitions under the AEDPA. Alternatively, the district court dismissed the petition because the factual predicate for the perjury claim could have been discovered through the exercise of due diligence at trial. On May 3, 2001, the district court granted Fierro a Certificate of Appealability on both of these issues.

## II

The sole issue that we address in this appeal is whether Fierro's successive habeas petition is barred by the one-year statute of limitations established under the AEDPA. The state

7

contends that the statute of limitations expired no later than November 28, 1997 and that Fierro's February 27, 1998 petition is therefore untimely. Fierro maintains that his petition was timely for two reasons. First, Fierro argues that he satisfied the AEDPA statute of limitations by filing a motion for authorization in this Court -- which included the "essential elements" of his habeas application -- within one year of the final judgment on his state petition. Second, Fierro argues that the limitations period should be equitably tolled in this case because "it would be an 'indefensible sort of entrapment'" to bar a petition filed in accordance with a scheduling order issued by the district court at the state's request.

Agreeing with the state, the district court dismissed Fierro's petition as barred by the statute of limitations because it found "absolutely nothing that would excuse the untimely filing." We review de novo the district court's dismissal of a habeas petition on procedural grounds. See Emerson v. Johnson, 243 F.3d 931, 932 (5th Cir. 2001). We review the district court's denial of equitable tolling for an abuse of discretion. See Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000).

A

The initial question here is whether Fierro has actually met the time requirements of the applicable statute of limitations. Under the AEDPA, state prisoners have one year in which to file

8

petitions for a writ of habeas corpus in federal court. See 28 U.S.C. § 2244(d)(1). Where a petitioner's state court conviction became final before the enactment of the AEDPA, the one-year statute of limitations begins to run on the date of the AEDPA's enactment -- that is, April 24, 1996. See United States v. Flores, 135 F.3d 1000, 1005 (5th Cir. 1998). In the present case, Fierro's murder conviction became final in 1986, well before the AEDPA was enacted. Thus, the AEDPA statute of limitations began to run with respect to Fierro's instant petition on April 24, 1996. Because the statute is tolled during the pendency of state court petitions for post-conviction relief, however, the statute did not begin to run on Fierro's petition until November 28, 1997, the date on which the judgment on his state habeas petition became final. See 28 U.S.C. § 2244(d)(2). It follows that the one-year limitations period expired on November 28, 1997 and that Fierro's February 1998 petition was filed outside this period.

Fierro nevertheless contends that his petition is not barred. He argues that his October 20, 1997 motion in this Court for authorization to file a successive habeas petition effectively initiated the federal habeas proceeding and thus satisfied the one-year statute of limitations -- notwithstanding that a habeas petition must be filed in the district court, not in the court of appeals. Specifically, Fierro argues that his motion for authorization should be deemed "an application for a writ of habeas

9

corpus" that was filed within one year of the state court judgment because (1) the motion is "indistinguishable" from (and is an "indivisible part of") his habeas petition and (2) the motion gave the state notice of the grounds for the petition. In this regard, Fierro observes that the motion included all of the elements of a habeas petition required by Rule 2(c) of the Rules Governing Section 2254 Cases, including a jurisdictional statement, a statement of facts, a statement of his claims, and legal authority supporting those claims. Because Fierro did not raise this argument in the district court, however, we review only for plain error. See Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997).

Although this issue is one of first impression, both the language of the AEDPA and analogous caselaw compel the conclusion that a motion for authorization to file a successive petition is not itself an "application for a writ of habeas corpus."[9] As a consequence, the filing of such a motion does not satisfy the one-year statute of limitations under the AEDPA. As an initial matter, the provision governing successive habeas petitions implicitly recognizes a distinction between a motion for authorization and an application for a writ of habeas corpus. Specifically, 28 U.S.C. § 2244(b)(3)(A) establishes that: "Before a second or successive application permitted by this section is filed in the district

_____

[9] We note that, following In re Epps, 127 F.3d 364, 365 (5th Cir. 1997), petitioners seeking to file a successive petition must attach the proposed petition to the motion for authorization.

10

court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." See also 28 U.S.C. § 2244(b)(3)(C) (providing that a circuit court "may authorize the filing of a second or successive application" if the petitioner makes a showing that the relevant criteria are met). The statute thus clearly contemplates that the actual application will be filed in the district court rather than in the circuit court. Indeed, the rules of appellate procedure explicitly require the petitioner to file "an application for a writ of habeas corpus" in the district court. See Fed. R. App. P. 22(a).[10]

Cases addressing whether the AEDPA governs a particular petition have similarly concluded that a habeas case is "pending" only if an actual habeas petition has been filed in the district court. For example, we have held that "the relevant date for determining the applicability of the AEDPA to habeas corpus petitions is the date that the *actual habeas corpus petition* is filed." Williams v. Cain, 125 F.3d 269, 274 (5th Cir. 1997) (emphasis added); see also Nobles v. Johnson, 127 F.3d 409, 413-14 (1997) (same). In reaching this conclusion, we rejected the

---

[10] As a general rule, "[a]n application is 'filed' . . . when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000). Thus, under Rule 22, an application for a writ of habeas corpus is "filed" when it is "delivered to, and accepted by," the district court.

11

contention that a motion to stay execution or a motion to appoint counsel initiates a habeas corpus proceeding.  See Williams, 125 F.3d at 274.  Although a motion for authorization to file a successive habeas petition may include a discussion of the merits of the underlying claims and other elements of an actual petition, the motion "is not itself a petition, because it does not call for (or even permit) a decision on the merits."[11]  Holman v. Gilmore, 126 F.3d 876, 879-80 (7th Cir. 1997) (discussing the status of a motion for appointment of counsel).  Like a motion for appointment of counsel, a motion for authorization "is a prelude to a collateral attack . . . but is not itself a collateral attack." Id. at 879.

Because Fierro's motion for authorization is merely a preliminary motion that does not itself initiate habeas

---

[11] The Supreme Court has held that a request for a Certificate of Appealability under 28 U.S.C. § 2253 is a "case" under Article III because "[i]t is a proceeding seeking relief for an immediate redressable injury." Hohn v. United States, 524 U.S. 236, 241, 246 (1998).  Hohn does not, however, address whether a preliminary filing -- like a request for a COA or a motion for authorization -- may be deemed an "application for a writ of habeas corpus."  See Moore v. Gibson, 195 F.3d 1152, 1163 (10th Cir. 1999) (noting that Hohn does not imply "that the petitioner's habeas corpus case has been initiated by the filing of such a preliminary motion [for appointment of counsel]"). As a consequence, Hohn does not affect our conclusion that Fierro's motion for authorization did not satisfy the AEDPA statute of limitations.  Similarly, in Liriano v. United States, 95 F.3d 119, 122-23 (2d Cir. 1996), the Second Circuit suggested in dictum that a petitioner could submit an "application" to the circuit court "accompanied by" the motion for authorization that "would be considered in determining the applicant's compliance with the applicable one-year limitations period."  Here again, the court did not address whether a motion for authorization alone could satisfy the statute of limitations.

proceedings, it cannot satisfy the statute of limitations established under the AEDPA. We therefore conclude that the district court did not err, much less plainly err, by holding that Fierro filed his February 1998 habeas petition outside the one-year limitations period.[12]

B

Fierro next argues that, even assuming his petition was filed outside the statutorily-defined limitations period, the statute of limitations should be equitably tolled because both the parties and the district court initially operated under the assumption that the statute did not bar his petition. Relatedly, Fierro also argues that due process requires the enforcement of the district court's scheduling order, which set the deadline for filing Fierro's petition outside the limitations period, because he relied on that order in filing his petition. The state responds that its request for the scheduling order was not based on the assumption, implicit or explicit, that Fierro's petition was timely. Because Fierro's

_____

[12] Quite apart from the question whether the motion for authorization constitutes a habeas petition is the question whether, and under what circumstances, the filing of such a motion in a court of appeals may equitably toll the statute during the pendency of the motion. Although the Supreme Court has made it clear that the AEDPA tolling provision does not authorize tolling during the pendency of federal proceedings, neither the Supreme Court nor this Court has addressed the application of equitable tolling in this context. See Duncan v. Walker, 121 S.Ct. 2120, 2125 (2001). We need not reach this issue, however, because Fierro's February 1998 petition was untimely even if we do not count the 22-day pendency of his motion for authorization in this Court.

13

failure to file his petition within the one-year limitations period was the result of his own legal error, we conclude that Fierro has not demonstrated that the circumstances of this case are sufficiently exceptional to warrant equitable tolling.

We have recognized that the one-year limitations period for filing habeas petitions established in § 2244(d)(1) is not a jurisdictional bar and is therefore subject to equitable tolling. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). Although equitable tolling is a "discretionary doctrine that turns on the facts and circumstances of a particular case," we ordinarily "draw on general principles to guide when equitable tolling is appropriate." Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999). As a general rule, equitable tolling operates only "in rare and exceptional circumstances" where it is necessary to "preserve[] a plaintiff's claims when strict application of the statute of limitations would be inequitable." Davis, 158 F.3d at 810-11 (citation and internal quotation marks omitted). Equitable tolling thus applies "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999) (citation omitted). As a consequence, neither "excusable neglect" nor ignorance of the law is sufficient to justify equitable tolling. Id.

14

In United States v. Patterson, 211 F.3d 927, 931 (5th Cir. 2000), we applied equitable tolling because a district court order unintentionally misled the prisoner.  In Patterson, the district court granted a *pro se* prisoner's request to dismiss his petition without prejudice (over the government's objection) so that the prisoner could retain a lawyer.  See id.  Observing that the prisoner and the district court "apparently were under the mistaken impression" that a later petition would not be time barred, we held that equitable tolling applied because the prisoner relied to his detriment on the district court's decision to dismiss for the express purpose of allowing later refiling.[13]  Id. at 931–32.  In contrast, we held in Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001), that equitable tolling was not appropriate where a state court erroneously entered the return date for a *pro se* prisoner's supervisory writ to the Louisiana Court of Appeals because the prisoner then "waited more than four months to file his federal habeas petition."  Id.

Applying these principles to the present case, we conclude that equitable tolling is not appropriate because Fierro's failure to file his habeas petition within the applicable limitations

---

[13] The Patterson Court also noted that, in a non-AEDPA context, the Supreme Court "indicated that if a 'court has led the plaintiff to believe that she had done everything required of her,' the doctrine of equitable tolling may be applied." Patterson, 211 F.3d at 931 (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984)).

period is attributable solely to his mistaken assumption that the statute of limitations did not apply to his petition. The record reflects no other practical or legal reason that would have prevented Fierro from filing his federal petition during the applicable limitations period. As noted above, Fierro appealed the denial of his state habeas petition to the United States Supreme Court. Rather than filing his federal habeas petition concurrently with his Supreme Court appeal, however, Fierro elected to wait until the Supreme Court acted on his petition for certiorari on June 29, 1997. Fierro argues that he believed the one-year statute of limitations established in § 2244(d) did not apply to successive habeas petitions under § 2244(b) or, alternatively, that filing a petition for certiorari tolled the statute of limitations.[14] He therefore did not file his motion for authorization until October 1997 and did not file his habeas petition until February 1998.

As Fierro concedes, neither the state nor the district court made affirmative representations regarding the running of the AEDPA limitations period. Fierro's argument is, in effect, that he is entitled to equitable tolling because his untimely filing was based on an interpretation of the AEDPA statute of limitations that was reasonable at the time, although it later proved to be incorrect.

---

[14] In October 1999 (after the parties briefed the question but before the district court dismissed Fierro's petition), we decided as an issue of first impression that the AEDPA limitations period is not equitably tolled during the pendency of a petition for certiorari in the Supreme Court. See Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999).

16

But we have made it clear that a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling.  See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); see also Felder v. Johnson, 204, F.3d 168, 172 (2000) (same).

This policy has particular force in the present case because Fierro did not file his motion for authorization until nearly four months after the Supreme Court denied his petition for certiorari. He then had more than two weeks after we authorized his successive petition in which to transform his motion for authorization into a proper habeas petition.[15]  Although the application and interpretation of the AEDPA statute of limitations was somewhat unsettled during this period, we think that such uncertainty should have militated *against* taking an unnecessary risk by waiting to file a motion for authorization and habeas petition.  Given the nature of the interests at stake, it seems to us that it was incumbent upon counsel to err on the side of caution and file Fierro's petition within the most conservative of possible

_____

[15] Cf. Ott, 192 F.3d at 514 (denying equitable tolling where prisoner did not file state habeas claim until one day before the expiration of the one-year limitations period and therefore had only one day to file his petition after the state court judgment became final). Fierro's failure to file a habeas petition within the applicable limitations period is particularly difficult to excuse in view of his assertion that his motion for authorization contained all of the essential elements of a habeas petition.

17

deadlines under the statute.  In short, counsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file Fierro's habeas petition in the district court within the one-year limitations period.

Fierro argues that equitable tolling is nevertheless warranted here because the district court's scheduling order, issued at the state's request, led him to believe that the AEDPA statute of limitations was not at issue in his case.[16]  Because the parties and the court apparently assumed that his petition was not time-barred, Fierro argues that due process requires equitable tolling of the statute of limitations in accordance with the February 1998 filing deadline established by the scheduling order.

Even assuming that the state labored under the same mistaken assumption that the statute of limitations was not an issue with respect to Fierro's petition, however, this argument fails.  As noted earlier, the applicable limitations period passed on November 28, 1997 -- three weeks before the state requested the scheduling order.  Thus, the state's request and the district court's order could not have contributed to Fierro's failure to comply with the one-year statute of limitations.  Although some legal questions concerning the operation of the statute of limitations remained

_____

[16] In response to the state's request for a scheduling order, Fierro asked the district court for permission to file his petition in February 1998.  The district court granted this request without comment.  The state was not required to (and did not) raise its statute of limitations defense until it filed an answer to Fierro's petition.

unresolved at the time of Fierro's petition, we therefore hold that application of the statute of limitations in this case does not violate Fierro's due process rights.[17]

We recognize that the application of procedural rules may appear formalistic -- particularly in a death penalty case -- when applied to bar a facially plausible habeas petition because of an error by habeas counsel. We emphasize, however, that Congress has imposed a strict one-year limitations period for the filing of all habeas petitions under the AEDPA, subject only to the narrowest of exceptions. The petitioner, through his counsel, clearly had notice of this potential bar to his claim for federal relief and yet imprudently failed to abide by the statute. This case simply does not present the sort of rare and exceptional circumstances that would justify equitable tolling.[18] We therefore conclude that

---

[17] Our precedent forecloses Fierro's related argument that the AEDPA statute of limitations is unconstitutional as applied to his case because it results in a "fundamental miscarriage of justice." See Graham v. Johnson, 168 F.3d 762, 787-88 (5th Cir. 1999) (rejecting the "argument that denying federal court review of a successive habeas application alleging that constitutional violations resulted in the conviction of an innocent person contravenes due process and constitutes cruel and unusual punishment").

[18] Cf. Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (holding that a *pro se* prisoner's incarceration before the enactment of the AEDPA and his lack of notice of the statute of limitations "does not present an extraordinary circumstance warranting equitable tolling"); Fisher, 174 F.3d at 714 (holding that a lack of notice of AEDPA provisions does not warrant equitable tolling); Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (denying a request for equitable tolling based on an "inadequate law library" in the petitioner's prison).

Fierro's successive habeas petition is time-barred because it was filed outside the AEDPA limitations period.

III

For the reasons set out above, we AFFIRM the judgment of the district court dismissing Fierro's petition for a writ of habeas corpus.[19]

AFFIRMED.

---

[19] We note that our order authorizing Fierro's successive petition also referred to "the related issue whether the attorneys who represented Fierro at trial and on direct appeal were ineffective for failing to discover the existence of the supplemental offense report on which the claim of perjured testimony is based." Recognizing that Fierro did not raise this claim in state court, the district court dismissed the claim without prejudice "to give [Fierro] the opportunity to exhaust state remedies with respect to it." Because the state has not challenged this aspect of the district court's order, it is a final judgment.

20