# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2010

No. 10-70005

Lyle W. Cayce
Clerk

RODRIGO HERNANDEZ,

Petitioner-Appellant,

versus

RICK THALER, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 5:08-CV-391

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Rodrigo Hernandez was convicted in 2004 of the rape and capital murder
of Susan Verstegen and sentenced to death. He filed a state application for writ

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-70005

of habeas corpus, claiming he had received ineffective assistance of counsel during trial. The trial court held an evidentiary hearing, and the Texas Court of Criminal Appeals denied all habeas relief. *Ex parte Hernandez*, No. 69,470-01 (Tex. Crim. App. Apr. 30, 2008) (unpublished). After reviewing the record, the federal district court denied all habeas relief on the merits and did not grant a COA.

Hernandez now seeks a COA on the same issues presented to the district court. He also moves for a stay of the federal habeas proceeding so he can return to state court and exhaust a new claim for relief—that because he is mentally retarded, he is ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). We deny a COA and a stay.

I. Certificate of Appealability.

A. Standard of Review.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Because AEDPA forbids a full consideration of the merits, a COA analysis is only a threshold inquiry of the claim and a general assessment of its merits. *Id.* at 337.

Hernandez contends he was denied his Sixth Amendment right to effective assistance of counsel. The analysis requires a preliminary, not definitive, application of the two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Miller-El*, 537 U.S. at 338.

2

No. 10-70005

Under the first prong, the petitioner must show that counsel's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Washington*, 466 U.S. at 687. The proper measure is whether "the representation fell below an objective standard of reasonableness." *Id.* at 688. That standard is highly deferential, and a court must presume that counsel's conduct falls within the wide range of prevailing professional norms. *Id.* at 689. Because it is easy to denounce an unsuccessful course of action with benefit of hindsight, courts should evaluate the challenged conduct from counsel's perspective at that time. *Id.* Therefore, unless the conduct was unreasonable as a matter of law, strategic decisions following a thorough investigation are "virtually unchallengeable." *Id.* at 690. Decisions after a less-than-thorough investigation may still be reasonable if supported by reasonable professional judgments. *Id.* at 691.

To satisfy the second prong, the petitioner must show that the deficient performance prejudiced the defense, meaning that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial." *Id.* at 687. There must be a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome, *id.*, but prejudice may also occur if "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Not all errors justify setting aside a conviction. The Sixth Amendment does not guarantee the right to counsel for the sake of having counsel, but rather to ensure that legal assistance afforded the defendant a fair trial and to justify reliance on the outcome. *Washington*, 466 U.S. at 691-92. Thus, if counsel's errors––no matter how unreasonable––did not have a prejudicial effect on the defense, they do not rise to the level of a constitutional violation. *Id.* at 693.

Both *Washington* prongs are mixed questions of law and fact. *Id.* at 698.

3

No. 10-70005

The state court's findings of fact are subject to deference under 28 U.S.C. § 2254(d), and the district court's findings are reviewed under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). *Miller-El*, 537 U.S. at 340. Because of the severity and finality of the death sentence, any doubts should be resolved in favor of the petitioner. *Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000).

### B. Analysis.

Hernandez contends that five separate actions and omissions by his attorney satisfy the *Washington* test: (1) failing to call Hernandez to testify during the hearing on his motion to suppress his confession, and erroneously arguing that Michigan law should govern the confession's admissibility; (2) failing to object to the prosecutor's allegedly misleading questions to the medical examiner regarding the amount of time necessary to cause death from a ligature; (3) failing to object to the prosecutor's comments regarding the alleged use of a ligature to cause death; (4) failing to argue, at the punishment phase, that residual doubt should mitigate imposition of the death penalty, and failing to raise residual doubt through cross-examination; and (5) failing to retain a dental expert to examine the possible bite marks on Verstegen's body and compare them to Hernandez's teeth. We address each action or omission in turn.

### 1. Failing To Call Hernandez To Testify, and Arguing Michigan Law.[1]

The state trial court held an evidentiary hearing to determine whether Hernandez's written confession should be suppressed. The two officers who in-

---

[1] The district court noted that Hernandez did not raise these two arguments in the state habeas proceeding, and therefore that they should have been dismissed as unexhausted claims. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The state, however, did not assert procedural default, and the court denied habeas relief on the merits under § 2254(b)(2). We therefore analyze the constitutional violation and not procedural default.

terviewed Hernandez testified that after he was given his *Miranda* warnings, he confessed to his involvement in Verstegen's death, claiming that he had raped her but had not intended to kill her. The officers also said that although Hernandez agreed to give a written statement, he asked one of them to write it for him because his hands were shaking too much. According to the detective who took the statement, Hernandez read it before initialing each page and signing the last page. Hernandez's attorney argued that the confession should be suppressed because it did not comply with Michigan law. The state trial court concluded that Texas and not Michigan law applied and that under Texas law the confession was proper, so it was admissible.

Hernandez now asserts that it was unreasonable error for his attorney not to put him on the stand to testify during the hearing. Hernandez contends that he would have testified that he had signed a blank form and that his initials were forged. The lawyer testified during the state habeas proceeding, however, that Hernandez was extremely nervous and had an extensive criminal record, so his credibility likely could be impeached. It would have been Hernandez's word against that of two officers. The attorney did suggest at the proceeding that the confession may have been forged, but he chose to raise that argument during cross-examination of the officers.

Hernandez's lawyer made a reasonable tactical decision not to call Hernandez to testify. The attorney believed it would do more harm than good for Hernandez to testify and that attacking the authenticity of the statement was better left to cross-examination of the officers. Had Hernandez testified that the confession was a forgery, the prosecution would have cross-examined Hernandez and thus could have argued that it was implausible that a man well versed in the criminal justice system would never sign a blank witness statement form. Reasonable jurists could not contest that the attorney's strategy was objectively reasonable, and thus this claim does not warrant a COA.

No. 10-70005

Hernandez asserts in his brief, without any support, that his attorney erred in failing to realize that Texas law would apply. It is equally possible, though, that the attorney, in a desperate attempt to secure exclusion, knew the confession was admissible under Texas law and thus decided to argue that the more favorable Michigan law should apply. Although there is no evidence of either rationale in the record, we must strongly presume that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Washington*, 466 U.S. at 690. Therefore, reasonable jurists cannot debate whether the attorney's actions were unreasonable. That is enough to deny a COA.

Additionally, the admission of Hernandez's confession did not prejudice the defense, so there was no constitutional violation. In fact, the confession may have helped the defense, because it was the only evidence (other than putting Hernandez on the stand at trial) supporting his defense that he accidentally killed Verstegen and thus should be convicted of only felony murder.

Hernandez's attorney testified that if the confession had been suppressed, his strategy would have been to argue that Verstegen and Hernandez had engaged in consensual sex. But the evidence makes this argument implausible. Verstegen's body was found in a garbage can, headfirst and unclothed from the waste down. In tape-recorded phone conversations with his sister, Hernandez denied knowing Verstegen, and her body showed evidence of assault and strangulation. Thus, Hernandez would have had to take the stand to lend any credibility to that defense. Either way, if Hernandez had testified that Verstegen's death was an accident or that they had engaged in consensual sex, he would have opened himself to a withering cross-examination raising his prior criminal history and violence against women. Therefore, because the confession did not prejudice the defense, reasonable jurists could not debate that a constitutional violation did not occur.

6

No. 10-70005

2. Failing To Object During Questioning of Medical Examiner.

The medical examiner, Dr. Bux, testified at trial that the marks on Verstegen's neck indicated that she was likely strangled by a ligature or a combination of ligature and hands, although it was possible that only hands were used. At the end of Bux's testimony, the following exchange occurred between him and the prosecutor:

Q: How long would a person then have to hold Susan Verstegen's neck before she would not come back to consciousness?

A: That's a good question. We know that they'll come back in 100 seconds. We don't know what the magic number is after that. It would be at least two to three minutes, and it might be longer in somebody that's young and healthy like she was. . . .

Q: Is it fair to say that the absolute minimum that a person would have to hold a ligature on Susan Verstegen's neck after she lost consciousness is two minutes?

A: Yes, sir. I think that would be very conservative.

Hernandez claims that it was an unreasonable error for his attorney not to object to the second question, because it mischaracterized Bux's earlier testimony that Verstegen could have been strangled with hands alone.

The decision not to object falls squarely within the wide range of reasonable trial tactics. The first question used the phrase "hold Susan Verstegen's neck," which implies using hands alone, whereas the second question used the phrase "hold a ligature on Susan Verstegen's neck," which implies either ligature alone or hands and ligature. Looking at the line of questioning as a whole makes it obvious that the prosecutor was using this portion of Bux's direct examination to elicit testimony as to the length, not the manner, of the strangulation.

Had Hernandez's attorney interrupted the flow of questioning to ask the prosecutor to clarify a trivial and immaterial point, it could have drawn more at-

7

tention than necessary to the strangulation. The decision to raise an objection is driven largely by trial strategy, and we have no reason to second-guess it. Further, even though the attorney testified at the state habeas proceeding, Hernandez failed to question him regarding his motive behind the decision to object. The threshold is lower for a COA than for habeas relief, yet the petitioner still has the burden of showing that reasonable jurists might find his lawyer's conduct objectively unreasonable at the time of trial. *See Washington*, 466 U.S. at 687-91. Hernandez has failed to meet that burden, so reasonable jurists would defer to the attorney's strategy. This claim does not warrant a COA.

### 3. Failing to object during closing argument.

During closing arguments, the prosecutor summarized Bux's testimony and said that "some type of ligature was used—either ligature alone or ligature and hands." Hernandez argues that it was an unreasonable error for his attorney to fail to object to that mischaracterization of Bux's testimony. Hernandez asserts that the prosecutor put forth a "more vicious version of the facts" when he said that some type of ligature had been used. Hernandez also contends that the prosecutor's statements called into doubt his written confession, which stated that he had accidentally strangled Verstegen with only his hands.

There is no apparent reason why one method of strangulation is more vicious than the other. Arguably, some might believe that strangling someone with, as the idiom goes, "your bare hands" is more vicious than using a ligature, which would make the task easier. When weighing the harm caused by drawing attention to the fact that Hernandez may have strangled Verstegen with only his hands, against the benefit of bolstering the credibility of the written confession, it is reasonable to decide that making an objection was not in the defense's best interest.

Again, Hernandez did not question his trial attorney during the state ha-

beas proceeding as to his reasoning for choosing not to object. Instead, he only argues that "there can be no strategy for failing [to object]." Because Hernandez has put forth no reason to second-guess his lawyer's decision, reasonable jurists must presume that the trial tactic was sound, and the claim does not warrant a COA.

### 4. Failing To Argue Residual Doubt.

Hernandez contends that his attorney "should have attacked through additional evidence, vigorous objections, and closing argument the serious lack of proof as to [Hernandez's] guilt of the capital murder." By failing adequately to raise residual doubt in the minds of jurors, Hernandez argues, his attorney's performance was deficient and prejudiced the punishment phase of trial.

Despite vigorously denouncing his attorney's performance, Hernandez does not provide the court with any additional exculpatory evidence to consider. Nor does Hernandez describe any objections that counsel should have raised, other than those that the state habeas court, the district court, and this court found meritless. Moreover, Hernandez does not identify the alleged flaws in counsel's closing arguments. The only two issues that Hernandez *does* raise in support are that his lawyer (1) did not attack with enough force the prosecution's reliance on "mere science" and the three-page confession, when pointing out that there were no eye-witnesses, and (2) should have mentioned that the police questioned other individuals and asked them to submit to polygraph and DNA testing.

The attorney testified at the state habeas proceeding that in cases where the defendant's DNA links him to the victim and there is a signed confession, arguing residual doubt is of little use. Counsel believed that by finding Hernandez guilty of capital murder, the jury had plainly rejected the felony-murder defense, so arguing residual doubt would be harmful. The defense's strategy was thus to

convince the jury that because of Hernandez's growing maturity and peaceful prison record, he would not pose a future threat if sentenced to life without parole.

We defer to the state habeas court's factual finding that counsel conducted a thorough investigation of the law and facts before settling on that strategy. Such trial decisions are "virtually unchallengeable," and Hernandez has given us no evidence to doubt that decision's reasonableness. *See Washington*, 466 U.S. at 690. Conclusional arguments and assertions such as those Hernandez provides are insufficient. *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008). No reasonable jurist could debate whether the strategy was reasonable. This claim does not warrant a COA.

### 5. Failing To Retain a Dental Expert.

At trial, one of the investigating detectives testified that another detective, from looking at autopsy photos and not the autopsy report, believed that one of the marks on Verstegen's body was possibly a bite mark; he consulted a forensic dental expert, who said that he would need dental impressions to compare to the photograph. The search warrant authorized detectives to take dental impressions of Hernandez, which they did. Other than the detective's brief testimony on the issue, the only other mention of bite marks at trial was the testimony of Bux, who stated that he did not mention bite marks in the autopsy report because he could not determine whether the marks in question were in fact bite marks.

Hernandez claims that it was unreasonable error for his attorney to fail to retain a dental expert to compare his dental impressions against the marks in the autopsy photos. Hernandez again makes a broad conclusional statement without any evidence in support.

The autopsy report did not include any mention of bite marks, and Her-

nandez gives no reason why counsel should not have relied on that report in conducting the investigation. The only mention of bite marks was in the search warrant, and there is no evidence that the dental impressions were ever used. In fact, Hernandez does not even argue that the bite marks do not match his.

Hernandez cannot assert merely that his attorney should have investigated some matter; he must make an "affirmative showing of what the missing evidence or testimony would have been" and explain why it would have made a difference during trial. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Without such a showing, "a habeas court cannot even begin to apply [*Washington*'s] standards." *Id.* (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)) (internal quotation marks omitted). No reasonable jurist could debate whether counsel's conduct was reasonable, and therefore no COA should issue.

## II.  Motion for Stay.

A federal court may not grant habeas relief unless the petitioner has exhausted all available state court remedies, including state habeas review. 28 U.S.C. 2254(b)(1)(A). If presented with an application with both exhausted and unexhausted claims, a court may stay and abate the federal proceeding to allow the defendant to return to state court to exhaust the necessary claims. A stay allows the petitioner to return to federal court once the state court has adjudicated the claims, and such a stay tolls AEDPA's one-year statute of limitations. *Rhines v. Weber*, 544 U.S. 269 (2005).

Hernandez intends to raise an *Atkins* claim in the state habeas court and thus moves for a stay. A court may issue a stay, but only in limited circumstances so as not to undermine AEDPA's objectives of reducing delay, particularly in capital cases. *See id.* at 276-77. First, there must be good cause for the failure to exhaust. Second, a district court should not grant a stay where the unex-

No. 10-70005

hausted claims are plainly meritless. Third, there should be reasonable time limits on the petitioner's trip to state court and back. And finally, a court should not grant a stay if the petitioner engages in abusive litigation tactics or intentional delay. We deny a stay, because the unexhausted claim is meritless.

Under 28 U.S.C. § 2444(d)(1)(A), a petitioner must bring his federal claim within one year from the date on which judgment became final by the conclusion of direct review or from the expiration of the time for seeking such review. The period is tolled while state post-conviction or collateral review is pending. § 2444(d)(2). *Atkins* claims are not exempt from the limitations period and may be time-barred. *In re Lewis*, 484 F.3d 793, 796 (5th Cir. 2007). Because Hernandez's limitations period expired on April 30, 2009, the future *Atkins* claim would be time-barred.

The limitations period may be subject to equitable tolling, which is applied restrictively and only in "rare and extraordinary circumstances" where strict application of the statute of limitations would be inequitable. *In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006); *see Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002). Equitable tolling usually applies where the petitioner is prevented in some extraordinary way from asserting his rights.[2] Hernandez argues that extraordinary circumstances exist here, because his attorney failed to file the claim timely, and he "has no [other] vehicle in which to raise this mental retardation issue."

First, if failure to file timely were deemed to be rare or extraordinary, the exception would swallow the rule. "Excusable neglect" does not justify equitable tolling. *Fierro*, 294 F.3d at 682. Second, although Hernandez's *Atkins* claim is time-barred, that bar does not foreclose the possibility that he could bring a *Ford*

---

[2] *See Fierro*, 294 F.3d at 682. For example, lack of counsel and constraint by the Texas two-forum rule qualify as extraordinary circumstances. *See In re Wilson*, 442 F.3d 872; *In re Hearn*, 389 F.3d 122 (5th Cir. 2004) (on petition for rehearing).

No. 10-70005

claim once an execution date is set.[3]  Because Hernandez's *Atkins* claim is time-barred and he has not met the restrictive standard for equitable tolling, the claim is meritless.  We deny the motion to stay proceedings.

The application for a COA is DENIED.  The motion for stay is DENIED.

---

[3] *See Panetti v. Quarterman*, 551 U.S. 930 (2007); *see also Ford v. Wainwright*, 477 U.S. 399 (1986).  We express no view on the merits of any such claim, which is not before us.