# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2022

Lyle W. Cayce
Clerk

No. 20-61026

Geovani Maradiaga-Ochoa,

*Petitioner*,

*versus*

Merrick Garland, *United States Attorney General*,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
Agency No. A200-030-803

Before Davis, Jones, and Elrod, *Circuit Judges*.
Per Curiam:[*]

Geovani Maradiaga-Ochoa seeks to reopen a removal proceeding. The immigration judge denied Maradiaga's motion to reopen, and the BIA affirmed and dismissed Maradiaga's appeal. Because we conclude that the BIA did not abuse its discretion when it determined that (1) Maradiaga received notice of the proceeding, (2) Maradiaga's motion to reopen was

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-61026

untimely, and (3) there was no substantial change to country conditions, we AFFIRM the judgment of the BIA.

I.

Maradiaga, a citizen of Honduras, entered the United States on July 9, 2005. On July 12, 2005, he was interviewed by a border agent and "readily admitted to being a national of Honduras by virtue of birth and to having just illegally entered the United States." On the same day, the agent personally served Maradiaga with a Notice to Appear that charged him with removability and ordered him to appear before an immigration judge on September 29, 2005. The Notice to Appear was in English, and Maradiaga states that the agent never explained its contents in Spanish, the only language he knows. The Notice to Appear indicates that Maradiaga was provided oral notice in Spanish of the time and place of his hearing and the consequences for failing to appear. The Notice to Appear also bears Maradiaga's signature and fingerprint. Upon his release from custody, Maradiaga stated that he believed himself to be "in complete freedom."

Maradiaga did not appear at his hearing. The immigration judge found that documented evidence submitted by the Immigration and Nationality Service (INS) established the truth of the facts contained in the Notice to Appear. The judge then entered an *in absentia* removal order.

In March 2020, Maradiaga moved to reopen the proceedings to rescind the removal order. Maradiaga alleges that he was never clearly notified that he had to attend a hearing. He states that he was in a state of delirium at the time due to his diabetes, and he alleges that the border agents did not notify him of the hearing in Spanish. He also states that he did not become aware of the removal order until nearly fifteen years later, when he filed a Freedom of Information Act request.

No. 20-61026

Maradiaga also moved to reopen for the purpose of applying for asylum, statutory withholding of removal, and protection under the Convention Against Torture. Maradiaga describes several harmful incidents that some of his family members have reported in Honduras in the fifteen years between the removal hearing and his discovery of the order. In 2006 and 2010, his sister filed police reports against a man who attempted to rape her. After her assailant was tried and acquitted, she received an anonymous death threat concerning her family. In 2013, Maradiaga's brother was murdered, and although the family suspects that the murderer was his sister's assailant, the police never arrested anyone. Maradiaga also received an anonymous death threat after he inquired about the murder. As a result, Maradiaga fears persecution upon returning to Honduras.

In April 2020, the immigration judged denied Maradiaga's motion to reopen. The immigration judge found that Maradiaga had received proper notice of the hearing, that his motion was untimely, that his argument for asylum was based on personal circumstances instead of changed country conditions, and that the case did not warrant a *sua sponte* reopening.[1] The BIA affirmed and dismissed the appeal. Maradiaga timely petitioned this court for review.

## II.

Maradiaga challenges the BIA's denial of reopening on several grounds. He first argues that he did not receive proper notice of the September 29, 2005 hearing under 8 U.S.C. § 1229(a)(1). He next argues for reopening on the basis of exceptional circumstances. Finally, regarding his intentions to apply for asylum upon reopening, Maradiaga argues that the

---

[1] Maradiaga does not ask this court to consider the *sua sponte* reopening issue, so we will not do so.

BIA failed to consider all the evidence regarding changed country conditions. We reject each argument.

## A.

We review the disposition of a motion to reopen under a "highly deferential abuse-of-discretion standard." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). Accordingly, we "must affirm the BIA's decision as long as it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.*

Although we review questions of law *de novo*, we defer to the BIA's interpretation of immigration statutes "unless the record reveals compelling evidence that the BIA's interpretation is incorrect." *Id.* Further, "[t]he BIA's factual findings are reviewed under the substantial-evidence test, meaning that this court may not overturn the BIA's factual findings unless the evidence compels a contrary conclusion." *Id.* We consider the "underlying decision of the [immigration judge] only if it influenced the determination of the BIA." *Id.*

## B.

We first address whether the BIA properly denied reopening Maradiaga's proceedings for the purpose of rescinding the order. We conclude that the BIA did not abuse its discretion when it determined that Maradiaga was properly notified and that the exceptional circumstance provision was inapplicable.

## 1.

Under 8 U.S.C. § 1229a(b)(5)(C), an *in absentia* removal order may be rescinded only

No. 20-61026

(i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice [of the hearing] in accordance with [§ 1229(a)(1) or (2)] . . . or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

Maradiaga argues that he lacked notice because his diabetes and delirium put him in an "impaired mental state" when he signed the Notice to Appear. Additionally, he argues a lack of proper notice because the Notice to Appear was not in his native Spanish. Though 8 U.S.C. § 1229(a)(1) does not by its terms require notice to be in the alien's native language, Maradiaga asks us to infer this requirement based on § 1229a(b)(7).[2] He also denies that he received oral notice in Spanish from the border agents. The Government responds that the Notice to Appear, bearing Maradiaga's signature and fingerprint, confirms that he received oral notice in Spanish. Further, it contends that § 1229(a)(1) does not require the Notice to Appear to be in any language other than English.

---

[2] 8 U.S.C. § 1229a(b)(7) states the following:

Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 1229(a) of this title, was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (e)(1)) to attend a proceeding under this section, shall not be eligible for relief under section 1229b, 1229c, 1255, 1258, or 1259 of this title for a period of 10 years after the date of the entry of the final order of removal.

Under 8 U.S.C. § 1229(a)(1), an alien who is subject to removal proceedings is entitled to written notice of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The alien must also be informed of the consequences of failing to appear after receiving notice, *id.* § 1229(a)(1)(G)(ii), including that the immigration judge may enter an *in absentia* removal order against him. *Id.* § 1229a(b)(5)(A). This court has recognized on several occasions that "[§] 1229(a)(1) does not explicitly require that the [Notice to Appear] be in any language other than English." *Cruz-Diaz v. Holder*, 388 F. App'x 429, 430 (5th Cir. 2010) (unpublished); *Chavez v. Holder*, 343 F. App'x 955, 957 (5th Cir. 2009) (unpublished); *Barbosa v. Filip*, 308 F. App'x 822, 824 (5th Cir. 2009) (unpublished). And we determine notice to be sufficient if the Notice to Appear comported with the statutory requirements. *Cruz-Diaz*, 388 F. App'x at 430–31.

The BIA correctly found no error in the immigration judge's determination that Maradiaga was properly notified. The Notice to Appear that was personally delivered to Maradiaga clearly stated the time and place of the removal proceedings as required under § 1229(a)(1). The statute by its terms does not require the Notice to Appear to be in English, and, in any event, Maradiaga confirmed with his signature and fingerprint that he was orally instructed in Spanish of the time and place of the hearing, as well as of the consequences for failing to appear. This information is consistent with the information included in the Form I-213 in this case, which states that Maradiaga understood that a failure to appear would result in his deportation *in absentia*. It is possible that Maradiaga did not comprehend every detail of what was happening due to the language barrier and his condition at the border. But we cannot conclude that the BIA abused its discretion in determining from the evidence that the statutory requirements for notice were met.

Therefore, we affirm the BIA's determination that Maradiaga received proper notice.

2.

Maradiaga argues that the BIA did not properly consider his claim for exceptional circumstances. In particular, he asserts that equitable tolling allows his claim to survive the statute's 180-day time limit. He argues that he "diligently pursued his rights" because he filed his motion to reopen within 90-days after learning of the removal order in 2020. He also states that he was feeling ill and mentally unstable due to his diabetes and difficult journey, and that his condition was an extraordinary circumstance that prevented him from timely filing his motion.

The Government responds that the exceptional circumstances exception is inapplicable because Maradiaga was not entitled to equitable tolling. It argues that Maradiaga did not diligently pursue his rights because he knew that he entered the United States illegally, personally received a Notice to Appear, and did nothing to determine his status for fifteen years. The Government also asserts that Maradiaga's illness relates to his condition in July 2005, when he crossed the border, and not during his September hearing or the 180 days thereafter. It also states that Maradiaga offered no evidence of his diabetes in 2005 and that the records only confirm his diabetes as far back as 2016.

Under 8 U.S.C. § 1229a(b)(5)(C)(i), an *in absentia* removal order may be rescinded "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances . . . ." And under § 1229a(e)(1), "exceptional circumstances" are those such as "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or

serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances . . . ."

A litigant who fails to file a motion to reopen within 180 days of removal based on exceptional circumstances is entitled to equitable tolling if two elements are satisfied: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 344 (5th Cir. 2016) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)). "[N]either excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (internal quotation omitted).

The BIA did not abuse its discretion in finding Maradiaga's motion untimely. Maradiaga did not move to reopen until nearly fifteen years after the removal order was issued. Obviously, that is well beyond the 180-day time limit. Even if timely, we would not consider his condition at the border to be an exceptional circumstance. Nor do we believe that Maradiaga is entitled to equitable tolling. He had full knowledge that he illegally crossed the border, signed a Notice to Appear showing that he was notified of the hearing, and did nothing else to determine his status for fifteen years. This behavior cannot be called diligent and does not justify extending the statutory time limit.

Thus, the BIA correctly determined that the exceptional circumstances provision of § 1229a(b)(5)(C)(i) is inapplicable.

## C.

We next address whether the BIA properly determined that reopening was not warranted based on changed country conditions. Maradiaga argues that a change in country conditions is established due to the attacks against his sister, the murder of his brother, and the death threats Maradiaga

received for his subsequent investigation.  He argues that these incidents testify to the deterioration of the Honduran police force and its inability to protect him from persecution upon his return.  The Government responds that these attacks and threats constitute only personal circumstances.[3]

Under 8 U.S.C. § 1229a(c)(7)(C)(i), a "motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." However, for the purpose of applying for asylum, there is no time limit on filing if there are "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."    8 U.S.C. § 1229a(c)(7)(C)(ii).  A showing of a change in "personal circumstances" does not constitute a change in country conditions.  *Singh v. Lynch*, 840 F.3d 220, 222–23 (5th Cir. 2016) ("Singh's assertion that he fears for his safety upon returning to India, given the new threats and violence experienced by his mother and the Indian police's targeting of him, amounts to a change in personal circumstances and does not constitute changed country conditions.").

---

[3] Responding to Maradiaga's argument about the Honduran police's inability to protect him, the Government contends that this court lacks jurisdiction to consider it because Maradiaga did not raise the argument to the BIA and thus failed to exhaust his administrative remedies. *See* 8 U.S.C. 1252(d)(1); *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001) ("An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA—either on direct appeal or in a motion to reopen."); *see also Townsend v. INS*, 799 F.2d 179, 181 (5th Cir. 1986) ("When exhaustion is statutorily mandated, the requirement is jurisdictional."). However, Maradiaga sufficiently addressed the broader issue of changed country conditions to the BIA, so we will consider the additional reasoning Maradiaga brings to this court.

No. 20-61026

The BIA was correct to find no error in the immigration judge's finding of a lack of changed circumstances.  The incidents concerning Maradiaga and his family do not constitute changed country conditions, but rather personal circumstances.  We also cannot conclude that Maradiaga's claims regarding the deterioration of the Honduran police force constituted changed country conditions.  The only evidence in the record of the police force in 2005 is a statement in Maradiaga's asylum application that he "knew that the police would not protect [him]" because they were "bribed and controlled by the gangs."  So, it appears that such conditions were present the first time he filed for asylum; he has not shown there has been a material change.

\*           \*           \*

Because we hold that the BIA did not abuse its discretion when it determined that Maradiaga received notice, that his motion was untimely, and that there was not a substantial change to country conditions, we AFFIRM the judgment of the BIA.