# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 2, 2013

Lyle W. Cayce
Clerk

No. 12-70020

MANUEL VASQUEZ,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-930

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Manuel Vasquez was convicted of capital murder and sentenced to death in Texas state court. The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal, and Vasquez unsuccessfully sought both state and federal habeas relief. Vasquez now seeks a certificate of appealability pursuant to 28 U.S.C. § 2253(c) to appeal the district court's denial of habeas relief. We hold that reasonable jurists could not

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70020

debate the district court's well-reasoned and thorough decision that Vasquez is not entitled to habeas relief. Accordingly, we DENY the request for a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual circumstances underlying Petitioner-Appellant Manuel Vasquez's conviction are fully discussed in the district court's opinion. *Vasquez v. Thaler*, No. SA-09-CA-930-XR, 2012 WL 2979035, at *1-4 (W.D. Tex. July 19, 2012) (slip opinion). In brief, on the morning of March 19, 1998, Vasquez, a member of the Mexican Mafia, together with Johnny Joe Cruz and Oligario Lujan, forcefully entered the motel room of Juanita Ybarra. Ybarra was present, as was Moses Bazan. Vasquez, Cruz, and Lujan proceeded to attack Bazan and Ybarra. Bazan was assaulted until he lost consciousness. Ybarra was strangled to death, after which her motel room was searched for valuables. The robbery and murder were motivated by Ybarra's failure to pay the Mexican Mafia's "dime" tax, consisting of 10% of the proceeds of Ybarra's sale of illegal drugs.

A grand jury indicted Vasquez on a single count of capital murder on June 10, 1998. Vasquez was originally represented by Jacqueline Snyder, a court-appointed attorney, who was assisted by a court-appointed investigator. On January 21, 1999, the trial court substituted a new court-appointed investigator for the original investigator. Thereafter, the trial court appointed attorney Wendellyn K. Rush as co-counsel. The trial court then granted Snyder's motion to withdraw as counsel, and appointed Joel Perez as first chair counsel.

The trial's guilt-innocence phase commenced on November 2, 1999. On November 5, 1999, the jury returned a verdict of guilty. The trial's punishment phase began on November 8, 1999. Two days later, the jury returned its verdict, finding beyond a reasonable doubt that there was a probability Vasquez would commit criminal acts of violence constituting a continuing threat to society and that Vasquez actually caused the death of Ybarra or intended to kill her or

2

No. 12-70020

another, or that he anticipated a human life would be taken. The jury further found that there were insufficient mitigating circumstances to support a life sentence. The trial judge then sentenced Vasquez to death. Vasquez filed a direct appeal to the Texas Court of Criminal Appeals ("CCA"). The CCA affirmed Vasquez's conviction and sentence on February 6, 2002. Vasquez did not file a petition for a writ of certiorari with the United States Supreme Court.

On December 13, 2001, Vasquez filed an application for a state writ of habeas corpus. An evidentiary hearing was held by the state habeas court on August 5 and September 30, 2005. Further proceedings on Vasquez's application took place on May 3, 2006. The state habeas court recommended denying Vasquez's application for habeas relief on March 24, 2009. The state habeas court later amended its findings of fact and conclusions of law, but again recommended that habeas relief be denied. The CCA adopted, in part, the state habeas court's findings of fact and conclusions of law, and denied habeas relief on November 18, 2009. *Ex parte Manuel Vasquez*, WR-71807-01, 2009 WL 3842857 (Tex. Crim. App. Nov. 18, 2009) (unpublished).

Vasquez next filed a petition for habeas relief in the United States District Court for the Western District of Texas on November 12, 2010. Vasquez's petition asserted seven claims for relief. On July 19, 2012, the district court filed an opinion and order denying habeas relief and a certificate of appealability ("COA"), and also denied Vasquez's request for an evidentiary hearing. After receiving an extension of time, Vasquez filed an application with this court on November 3, 2012, seeking a COA to appeal the district court's judgment. Vasquez's application seeks a COA relating to the following claims: ineffective assistance of counsel, nondisclosure of *Brady* material, knowing use of perjured testimony, and violation of the fair cross-section requirement under the Sixth and Fourteenth Amendments.

## II.  STANDARD OF REVIEW

Vasquez's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, §§ 101-108, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended at 28 U.S.C. §§ 2244, 2253-2266).  Under AEDPA, a state habeas petitioner may appeal a district court's dismissal of his petition only if he first obtains a COA from the district court or the court of appeals.  28 U.S.C. § 2253(c)(1)(A).  To obtain a COA a petitioner must make "a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  A petitioner makes the requisite substantial showing by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Our review of a COA request therefore requires us to conduct a threshold inquiry into the merits of the claims a petitioner raises in his underlying habeas petition.  *See id.* at 336.  However, "[t]his threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."  *Id.*  In death penalty cases, "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor."  *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (alteration in original) (internal quotation marks and citation omitted).

The CCA reviewed the issues Vasquez raised in his petition and denied relief on the merits.  Accordingly, the district court reviewed Vasquez's petition for habeas relief under § 2254(d) and (e).  Under § 2254(d), the district court could not grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the CCA's denial "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

No. 12-70020

United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(e)(1), the state court's factual findings are presumed correct unless Vasquez provides "clear and convincing evidence" to the contrary.

"A state court's decision is contrary to Supreme Court precedent if: (1) 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law'; or (2) 'the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court].'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)), *cert. denied*, 549 U.S. 828 (2006). "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." *Id.* (quoting *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004)). "An unreasonable application may also occur if 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* at 787-88 (alteration in original) (quoting *Young*, 356 F.3d at 623).

## III.  DISCUSSION

### A.    Ineffective Assistance of Counsel

Vasquez raises six grounds on which he seeks relief for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984), sets the standard for vacating a conviction for ineffective assistance of counsel. Under *Strickland*, a petitioner must show (1) that trial counsel's performance was deficient, and (2) that petitioner's defense suffered prejudice as a result. *Cullen*

5

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," meaning that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To show prejudice, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but rather "whether it is reasonably likely the result would have been different." *Harrington v. Richter*, 131 S. Ct. 770, 791-92 (2011) (internal quotation marks and citations omitted). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792.

In applying *Strickland* to Vasquez's application for a COA, we are mindful that "[s]urmounting *Strickland*'s high bar is never an easy task" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo v. Moore*, 131 S. Ct. 733, 739-40 (2011) (internal quotation marks and citations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* at 740. Under § 2254(d) we must ask "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (emphasis added). We proceed to consider each of Vasquez's ineffective assistance of counsel claims.

No. 12-70020

1.   Failure to investigate and present exculpatory and impeachment evidence

Vasquez first argues that his counsel was deficient for failing to contact, interview, and call as witnesses at trial the residents of the motel rooms adjacent to the motel room in which Ybarra was murdered.  These witnesses included Elvira Perez and other unidentified individuals.  Vasquez further argues that counsel should have contacted numerous other individuals related to this case, including Ray Hernandez, Guadalupe Esparza, George Martinez, Angie and Jerry Chavarria, Edward Guerra, Melissa Rodriguez, Maria Garcia, Juan Vargas, Ernest Aguillon, and Brenda Monreal.  Finally, Vasquez argues that counsel should have called Vasquez's alleged accomplice in a series of burglaries and robberies, Jeff Lang.

According to Vasquez, these witnesses were relevant as follows: testimony by Perez and the other motel room residents was necessary to establish the time frame of the murder; Hernandez and Esparza both heard from Vasquez's co-accomplices that Vasquez was not involved in the murder; Angie Chavarria and Martinez saw Vasquez at their home during the time frame of the murder; Guerra, Rodriguez, Garcia, Vargas, Aguillon, and Monreal could provide additional information on Vasquez's location during the day of the murder and the night before; Martinez and the Chavarrias could also state that Vasquez did not return with Cruz and Lujan to Martinez's home after the murder; finally, Lang could refute testimony that Vasquez had previously struck Garcia.

The district court recognized that Vasquez's contention that failing to call these witnesses constituted ineffective assistance of counsel is mired with difficulties that prevent him from meeting *Strickland*'s deficient performance prong.  At his state habeas proceeding Vasquez only called four of the listed witnesses (Esparza, Jerry Chavarria, Martinez, and Aguillon) and submitted affidavits from three others (Angie Chavarria, Vargas, and Lang).  Nothing was

7

submitted as to Elvira Perez, Hernandez, Guerra, Rodriguez, Garcia, or Monreal. Vasquez also did not call his entire defense team—Vasquez only called Perez, one of two attorneys who represented him at trial, and who only became involved after Snyder, Vasquez's first attorney, withdrew. Thus, Perez could only testify as to the witnesses he was responsible for, and not those witnesses with whom Snyder or Rush may have worked. Vasquez also did not call either of the two court-appointed investigators who worked with his defense team. Finally, Vasquez has refuted none of the justifications put forward by Perez at the state habeas proceeding for why certain witnesses were not called. For example, Vasquez has not responded to Perez's testimony that various witnesses were not called because their testimony conflicted with that of Vasquez's alibi witness Mercedes Villarreal.[1]

Put together, Vasquez was unable to present to the state habeas court a complete picture of his defense team's investigation and representation. As a result, Vasquez could not overcome the presumption that the team's actions fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Pondexter v. Quarterman*, 537 F.3d 511, 521 (5th Cir. 2008) (state habeas court's conclusion that attorney's performance was not deficient for failing to call pathologist was arguably not contrary to, or an unreasonable application of, *Strickland*, where petitioner submitted no affidavit from trial attorney discussing whether he consulted with pathologist or explaining why he did not call one); *Bartee v. Quarterman*, 574 F. Supp. 2d 624, 649 (W.D. Tex. 2008) (petitioner failed to carry burden of showing deficient performance where he did not "present the state habeas court with any evidence . . . addressing the

---

[1] Villarreal testified that, on the day of the murder, Vasquez called her between 5:30 a.m. and 6:00 a.m. She further testified that she picked Vasquez up between 6:30 a.m. and 6:45 a.m., and brought him home where he remained while she went to work, until she picked him up at 6:00 p.m. and took him to Martinez's home.

objective reasonableness of [his] trial counsels' strategic and tactical decision-making" including what investigative efforts counsel undertook and the reasons for not presenting evidence). Jurists of reason could not disagree with the district court's conclusion that Vasquez failed to present to the state habeas court evidence that his attorneys' performance was deficient.

Vasquez similarly failed to show prejudice. There is good reason why "[c]laims that counsel failed to call witnesses are not favored on federal habeas review." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). "[T]he presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Id.* A petitioner seeking to show ineffective assistance of counsel must therefore "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). As the state habeas court and district court observed, of the four witnesses Vasquez called to testify during the state habeas proceeding only Jerry Chavarria testified that he would have been available to testify. But Jerry Chavarria did not see Vasquez between 5:30 a.m. and 8:00 a.m. the day of the murder. As to the three affidavit witnesses, none states that he or she would have been available to testify. *See Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect). Clearly, as to those witnesses who neither testified at the state habeas proceeding nor submitted affidavits, Vasquez also has failed to show their availability. Having failed to do so, Vasquez cannot now claim prejudice.

Accordingly, Vasquez cannot show that reasonable jurists would disagree with the district court's determination that the CCA's rejection on the merits of this part of Vasquez's ineffective assistance claims was neither contrary to, nor

involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state habeas proceeding.[2]

2.    Failure to call DNA expert

Vasquez's next ground for seeking a COA is that his defense team failed to review their DNA expert's report and did not present evidence at trial that DNA testing by the prosecution's expert was deficient. As with Vasquez's other uncalled witnesses, his ineffective assistance of counsel claim was hampered by his failure to call Perez's co-counsel or the DNA expert during the state habeas proceeding. Vasquez instead relied on a new DNA expert at the state habeas proceeding. But as the district court concluded, his new expert's observations, which relate to deficiencies in the prosecution's DNA testimony, do not alter the outcome.

First, Vasquez did not show what information the original DNA expert provided to Vasquez's attorneys and thus Vasquez failed to make clear how his attorneys' performance was deficient. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (rejecting ineffective assistance of counsel claim where petitioner "did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded"). Second, the later DNA expert's testimony only pertained to DNA evidence recovered from bloody articles of clothing found in Rodriguez's car. The prosecution's DNA expert testified that Bazan was a possible source of DNA on a shirt and jacket found in the car, and Vasquez was a possible source of DNA on a pair of shorts. The district court correctly observed that this evidence does not underpin the

---

[2] Our decision finds further support on grounds fully addressed in the district court's opinion, including that the witnesses' testimony was not reasonably likely to alter the trial's outcome, and that some of the testimony would be subject to hearsay objections. We find these reasons persuasive and adopt them as further support for our conclusion that, under AEDPA, the CCA did not unreasonably apply *Strickland*.

primary testimony relied on by the State—that of Cruz and Bazan, who identified Vasquez as one of the assailants. As a result, reasonable jurists would not disagree with the district court's decision that there is no reasonable probability that, but for the absence of the new DNA expert's testimony, the trial's outcome would have been different, and we deny a COA on this ground.

3.     Failure to voir dire jurors regarding accomplice-witness rule

Vasquez's third ground on which he seeks a COA is that counsel should have asked the venire about their views on accomplice-witness testimony and plea bargains.  The prosecution disclosed Cruz's decision to testify for the prosecution pursuant to a plea agreement during voir dire.  At that time, nine jurors already had been seated.  Defense counsel's request to ask the seated jurors about the accomplice-witness rule and plea bargains was denied by the state trial court.  Accordingly, Vasquez argued in the district court that his attorneys' performance was deficient for not asking about these subjects prior to the prosecution's disclosure and the seating of the jurors.

The district court concluded, not unreasonably, that counsel's failure to question the venire did not amount to deficient or prejudicial representation. Vasquez's defense team had no reason to ask about the accomplice-witness rule because, until the State's disclosure, there was no indication that Cruz would testify for the prosecution.  Vasquez's defense team also actively argued to the jury that the State's agreement with Cruz was a mark of desperation, born out of a realization that a conviction was otherwise unattainable.  Further, the jury received instructions on the accomplice-witness rule.  "[J]uries are presumed to follow their instructions . . . ." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Reasonable jurists would not debate the district court's decision to deny habeas relief on these grounds.

4.     Failure to request limiting instruction

Vasquez next contends that he should be granted a COA because his

attorneys did not request a limiting instruction on Vasquez's membership in the Mexican Mafia.  Although Vasquez's attorneys did make such a request in an oral motion in limine, they did not renew their request during Cruz's testimony or the testimony of a police detective who testified that Vasquez's tattoo was a Mexican Mafia tattoo.  As a result, Vasquez contends that this issue was not preserved for direct appeal.  *See Lasiter v. State*, 283 S.W.3d 909, 915 (Tex. App.—Beaumont 2009, pet. ref'd).

We do not grant Vasquez's request for a COA because he fails to explain how reasonable jurists would disagree with the district court's determination that Perez's justification for not renewing the objection—that evidence on the Mexican Mafia would come in over objections and that he did not wish to appear to "hide the ball"—was a legally valid trial strategy.  *See Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." (citation omitted)).  This is especially so given the state trial court's denial of a motion in limine seeking such an instruction.

The same result applies to the district court's prejudice analysis.  The district court noted that "[w]ith or without a limiting jury instruction, [Vasquez's] jury was going to learn of [Vasquez's] Mexican Mafia membership." Reasonable jurists would not debate the district court's application of AEDPA to this claim.

5.     Failure to object to background evidence

Vasquez contends that his attorney failed to object to evidence of Vasquez's participation in a "drug party" the night before the murder, and that this failure amounted to deficient representation resulting in material prejudice. Accordingly, Vasquez seeks a COA to appeal the district court's dismissal of this claim.

No. 12-70020

During trial, evidence was submitted that a group, including Cruz, Lujan, Vasquez, and several girls under the age of sixteen (one of whom had with her a one-year old baby), were in Vasquez's motel room smoking marijuana, drinking beer, and injecting heroin the night before the murder. Vasquez's attorney testified at the state habeas proceeding that he opted not to challenge this evidence because it was beneficial to the defense. Specifically, it allowed for the impeachment of Cruz's testimony because the jury would know that Cruz sold drugs to minors. The CCA adopted the state habeas court's conclusion that this evidence helped impeach two of the prosecution's witnesses. The district court also observed that admission of this evidence allowed Vasquez's defense team to call a toxicologist expert to testify about the harmful effects of cocaine and heroin on the human brain, including on the ability to perceive and recall events.

Vasquez does not address the efficacy of his attorneys' strategy and we conclude that reasonable jurists would not disagree with the district court's determination that counsel's decision not to challenge admission of this evidence was part of an objectively reasonable trial strategy. *See id.*

6.     Failure to object to closing argument

Vasquez's final ineffective assistance of counsel claim is that his attorneys should have objected to closing remarks by the prosecution during the trial's punishment phase and that a COA should issue as a result. Vasquez specifically objects to two of the prosecutor's statements. First, he complains of the prosecutor's statement during closing that "I would hazard to guess that [Vasquez] may be perhaps the most dangerous man to ever set foot in this building." Second, Vasquez objects to the prosecutor's description of the death penalty. "[A] needle will be inserted into [Vasquez's] arm as painlessly as possible . . . . [a]nd then, finally, quickly and gently he will drift off to sleep and never wake up again." Vasquez contends that such statements violated his due process rights under the Eighth and Fourteenth Amendments.

13

No. 12-70020

During the state habeas proceeding, Vasquez's attorney Perez testified that he did not object to the prosecutor's statements in an effort to salvage credibility and "not look obstructive." The CCA adopted the state habeas court's conclusion that there was no prejudice under *Strickland*. The district court reasoned that Vasquez's attorney could have reasonably concluded that an objection would draw additional attention to the prosecutor's remarks about Vasquez's dangerousness and the painlessness of lethal injection and thus trial counsel's representation also was not deficient. We conclude that jurists of reason would not disagree and that this claim is not worthy of further encouragement. *See Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992) ("A decision not to object to a closing argument is a matter of trial strategy."); *see also Hernandez v. Thaler*, 398 F. App'x 81, 87 (5th Cir. 2010) ("When weighing the harm caused by drawing attention to the fact that [petitioner] may have strangled [the victim] with only his hands, against the benefit of bolstering the credibility of the written confession, it is reasonable to decide that making an objection was not in the defense's best interest.").

We reach the same result as to the district court's conclusion that Vasquez suffered no prejudice in light of the extensive evidence detailing Vasquez's violent criminal background, which included evidence that he had killed at least three people (and almost killed a fourth), engaged in a series of burglaries and armed robberies, and never expressed remorse or contrition for his criminal activities. *See Pondexter*, 537 F.3d at 525 (overwhelming evidence of petitioner's guilt precluded establishing prejudice as a result of counsel's failure to object during closing argument). Vasquez failed to explain how his attorney's justifications for not objecting were incorrect or how an objection would have had a reasonable likelihood of achieving a different outcome at the punishment phase of the trial. Accordingly, we deny Vasquez's request for a COA on his claim that his attorneys improperly failed to object to the prosecutor's closing argument.

No. 12-70020

## B.    *Brady* Material

In addition to claiming ineffective assistance of counsel, Vasquez seeks a COA on the basis that the prosecution failed to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Vasquez contends that the prosecution did not inform his defense team of notes from an interview with Bazan on August 17, 1999, during which Bazan described the events of the murder differently from how he described them at trial. Further, the prosecution is alleged not to have disclosed Guerra's statement that Vasquez left his room early on March 19, 1998, to meet Villarreal. The prosecution also purportedly did not disclose Rodriguez's statement that Vasquez was staying with George and Angie Martinez, and left his motel room the day before the murder between 5:00 p.m. and 9:00 p.m.[3] This information, Vasquez asserts, would have allowed him to impeach Bazan's testimony regarding the assault, as well as show that Vasquez was not present during the time of the murder.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence that may give rise to a *Brady* violation includes evidence used to impeach a witness' testimony "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence.'" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To establish a *Brady* claim, Vasquez must show "that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Brady*, 373 U.S. at 87). Put another way, Vasquez must show "that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either

_____

[3] As the district court noted, Vasquez refers to "Melissa Rodriguez," which is likely a reference to prosecution witness Michelle Rodriguez.

15

exculpatory or impeaching; and (3) the evidence was material." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Vasquez's attorney Perez testified that he had seen multiple statements from Bazan, including written statements to the police and oral statements to hospital personnel, and was able to attack inconsistencies among those statements to impeach Bazan's credibility at trial. But Perez was unable to specifically recall whether the information cited by Vasquez was disclosed to him. Nevertheless, as already discussed, Vasquez did not call his attorney's co-counsel, who had been involved in the case significantly longer, or his previous attorney, who represented him for over a year. As the state habeas court and the district court correctly observed, this made it impossible to ascertain whether the prosecution did, in fact, suppress the alleged evidence. This alone was sufficient to deny Vasquez's *Brady* claim and Vasquez has not called that conclusion into doubt.

Vasquez also did not demonstrate to the district court that the allegedly suppressed evidence was material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) (alteration in original) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In evaluating the materiality of a petitioner's *Brady* claim "we must determine whether the allegedly suppressed evidence, considered collectively and in light of all of the evidence at trial, could reasonably be taken to put the entire case in a different light so as to 'undermine confidence in the outcome of the trial.'" *Edwards*, 442 F.3d at 267 (alteration omitted) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

At best, the allegedly undisclosed statements by Bazan would have provided additional impeachment material. But given the defense team's already extensive cross-examination and impeachment of Bazan, Vasquez has

not shown that, under AEDPA, the district court was wrong to conclude that Vasquez did not establish a reasonable probability that the trial's outcome would have been different.[4]    *See Drew*, 964 F.2d at 419-20 ("[A]ny incremental impeachment value [petitioner] would receive from the minor inconsistencies between the statements does not raise a reasonable probability that, had the statement been disclosed to [petitioner's] counsel, the outcome of the proceeding would have been different.").

Oral statements allegedly made by Guerra, Garcia, and Rodriguez, and contained in the prosecutor's handwritten notes, are similarly unavailing. At the outset, as the district court made clear, Vasquez's understanding of the contents of the prosecution's handwritten notes is based on his own interpretation. At his state habeas proceeding, Vasquez did not call the witnesses whose statements are allegedly reflected in the handwritten notes. Vasquez also did not question the State prosecutor about the notes' substantive contents. Having had the opportunity to call witnesses at his habeas proceeding, and actually having had the prosecutor available for questioning, Vasquez cannot now rely on ambiguity in the handwritten notes to create a reasonable probability that the result of the proceeding would have been altered by their disclosure.[5]    *Cf. Parr v. Quarterman*, 472 F.3d 245, 254-55 (5th Cir. 2006)

---

[4] Among the inconsistencies Vasquez's counsel elicited from Bazan at trial was Bazan's uncertainty as to whether there were three or four assailants, as well as whether he actually saw anyone strangle Ybarra.

[5] We further take note of the district court's observation that the contents of the notes related to Rodriguez do not constitute material evidence, even when interpreted in Vasquez's favor. Rodriguez allegedly told police that Vasquez left the motel between 5:00 p.m and 9:00 p.m. the night before the murder and herself went to sleep between 10:00 p.m. and 11:00 p.m. Because the murder occurred the following morning, the district court correctly concluded that this evidence does nothing to counter testimony by Bazan and Cruz that Vasquez participated in the assault and murder of Ybarra.

As with Vasquez's ineffective assistance of counsel claim, we also observe that no evidence has been offered, either in the form of testimony or affidavits, that Guerra or Garcia would have been available to testify at trial. *See Woodfox*, 609 F.3d at 808; *Boyd v. Estelle*, 661

(accepting state court's interpretation of handwritten notes as pertaining to one witness rather than another, where witness actually testified and prosecutor provided explanation of notes during state habeas proceeding).

We conclude that the district court correctly found that Vasquez failed to satisfy *Brady*'s suppression and materiality prongs and that reasonable jurists would not disagree, and accordingly deny his request for a COA on this ground.

## C.    Perjured Testimony

Vasquez next seeks a COA under *Napue*, 360 U.S. 264, arguing that the prosecution was aware that Cruz was a member of the Mexican Mafia and was required to alert the state trial court when Cruz testified to the contrary.

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." *Kinsel v. Cain*, 647 F.3d 265, 271 (5th Cir. 2011) (citing *Napue*, 360 U.S. at 269). To establish a denial of due process through the use of perjured testimony, a petitioner must show "that (1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *see also Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).

The district court determined that Vasquez failed to meet the first requirement. Vasquez presented no evidence that Cruz actually was a member of the Mexican Mafia. The only evidence to that effect was that state and county prison officials considered him a member of the Mexican Mafia. As the district court observed, there was no evidence that Cruz presented himself as a member of the Mexican Mafia at the time of trial, that he bore any identifiable Mexican

F.2d 388, 390 (5th Cir. 1981) (observing that complaints by uncalled witnesses are not favored "because allegations of what a witness would have testified are largely speculative" (citation omitted)).

Mafia tattoos, or that other members of the Mexican Mafia identified him as a member. This lack of evidence persuades us that this claim is not worthy of further encouragement and that a COA should not issue as to it.

The same result follows from the district court's finding that Vasquez could not meet the second requirement—materiality. Cruz testified that he associated with Mexican Mafia members, knew that Ybarra's robbery and murder was ordered by the Mexican Mafia, and agreed to split the proceeds of that robbery with members of the Mexican Mafia. From this evidence it is likely that the jury concluded that Cruz was a member of the Mexican Mafia, regardless of his assertions to the contrary. Certainly Vasquez would have gained little from Cruz's admission of membership in light of all the evidence that he associated and cooperated with members of that criminal organization. *See Drew*, 964 F.2d at 419-20. This is especially so given that Vasquez's defense team was able to impeach Cruz on a number of topics, including the fact that prison officials considered him a member of the Mexican Mafia.[6]

We conclude that Vasquez has failed to show how he is entitled, under AEDPA, to a COA on his perjured testimony claim.

## D.   Fair Cross-Section

Vasquez finally seeks a COA on the basis that his right to have a fair cross-section of the community on panels from which grand jurors are chosen was violated by an under-represented grand jury process. He contends that the grand jury that indicted him consisted of 12 people, only three of whom were Hispanic. According to Vasquez, this is evidenced by the fact that only three had Hispanic surnames. Vasquez proceeds to observe that persons of Hispanic origin were estimated to comprise 56.2% of the county population from which grand

---

[6] The district court noted that cross-examination of Cruz revealed that he had lied to police following his arrest, his plea agreement allowed him to avoid prosecution for capital murder, and his latest statement to police omitted the robbery of Ybarra.

jurors were pulled, but that only 33.6% of those individuals serving on grand juries between 1990 and 2000 had Hispanic surnames. Vasquez reasons that this demonstrates a woeful imbalance between the proportion of Hispanics in the population and those serving on grand juries, and results in violations of the Sixth and Fourteenth Amendments.

To establish a prima facie fair cross-section claim a petitioner must show that (1) "the group alleged to be excluded is a 'distinctive' group in the community," (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community," and (3) "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Importantly, "[t]he fair-cross-section requirement does not guarantee 'jur[ies] of any particular composition.'" *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009) (alteration in original) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)).

The district court enumerated a number of reasons why Vasquez's fair cross-section claim must fail. We focus on two. First, Vasquez only presents evidence of the composition of actual grand jury panels. It is well established that "[t]his data is irrelevant to the Sixth Amendment inquiry." *Paredes*, 574 F.3d at 290; *see also Rivas v. Thaler*, 432 F. App'x 395, 403 (5th Cir. 2011) (unpublished). Second, even if this evidence were relevant, it is unreliable insofar as Vasquez has compiled it based solely on his view of which of the names on juror lists appear Hispanic. Such evidence is clearly insufficient for establishing the actual number of Hispanic grand jurors and, by extension, the ratio between Hispanic and non-Hispanic grand jurors. *See Paredes*, 574 F.3d

No. 12-70020

at 290 (rejecting as "irrelevant" and "unreliable" grand jury data consisting of table "purporting to show the number of people with Hispanic names").[7]

Having presented to the district court evidence that is not pertinent to the Sixth Amendment analysis, and that in any event is unreliable, Vasquez's request for a COA is denied.

## IV.  CONCLUSION

For the reasons set forth above, the application for a COA is DENIED.

---

[7] To the extent Vasquez also alleges a denial of equal protection, we observe that this would require a showing of purposeful discrimination, and that Vasquez did not make such a showing before the district court.  *See Castaneda v. Partida*, 430 U.S. 482, 493 (1977). Reasonable jurists would also not disagree with the district court's dismissal of Vasquez's equal protection claim for the reasons discussed above.